DELILAH V. HERT, Claimant and Appellant, v. J. J. NEW-
BERRY, Employer, and LUMBERMAN MUTUAL CASUALTY
COMPANY, Defendant and Respondent.

No. 14075.
Submitted June 7, 1978.
Decided Sept. 8, 1978.
Rehearing Denied Oct. 11, 1978.
584 P.2d 656.

Michael J. Whalen (argued), Billings, for claimant and appellant.

Crowley, Haughey, Hanson, Toole & Dietrich, L. Randall Bishop (argued), Billings, for defendant and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This is an appeal from a judgment against the appellant, Delilah V. Hert, entered on October 17, 1977 in the Workers' Compensation Court, County of Big Horn, Billings area.

Delilah V. Hert (claimant), 48 years old, is married to Elmer Hert. They have two children, Sharon and Leslie, minors at the time of the first accident hereafter described. Claimant went to work for J. J. Newberry Company, formerly Hested's, Inc. (employer) on November 6, 1967. On July 16, 1971, in the course of her employment, on the premises of her employer, claimant went up a stairway and at the top thereof caught her foot on a torn rug. When she fell, she managed to turn herself sideways to avoid striking a counter in front of her and in the process fell to the floor, attempting at the time to catch herself with her hands. She was injured in the fall, resulting in a stiff neck, terrific headaches, vomiting and nausea, with pain in her left shoulder and down into her left arm. Claimant was attended by Dr. Perry Berg of Billings, who had before the accident operated on her for fusion in her lower back. Following this accident, Dr. Berg prescribed Robaxin, a muscle relaxant and Darvon, a pain pill. She was also attended to by Dr. E. W. Haaby, a chiropractor practicing in Hardin, Montana (claimant also resided in Hardin). Claimant first went to Dr. Haaby about August 1, 1971 for treatment. When she came to his office, she was suffering from severe headaches, severe occipital pain, left shoulder pain and left arm pain, which was pretty general. In addition to nausea and a stiff neck, she was very anxious. Objectively, he found she had a great deal of paresthesia in her lateral cervical muscles splinting in her neck, and her neck was so stiff she could hardly turn it. He could "visually" see her neck muscles were in spasm.

Claimant made claim for Worker's Compensation benefits as a result of the accident, and was paid such benefits through August 6, 1971. She then returned to work for her employer. The evidence indicates however, that she continued to have pain, stiff neck, and soreness in her left arm, chronic in nature, with tingling in some

fingers of her left hand and extreme discomfort in her left arm at night. She took time off from work on occasion so she could be attended by Dr. Haaby.

On January 28, 1974, claimant suffered a second accidental injury in the course of her employment, when she again fell on her employer's premises. In the second fall, she slipped on a waxed floor, her feet went out from under her and she landed on her seat. There is testimony this fall aggravated her existing chronic condition for a time but after a short period, she continued to have the same chronic symptoms she had suffered prior to the second fall of January 28, 1974. She worked for her employer until October 11, 1974, when she quit because she could no longer tolerate the amount of medication she was taking. Without medication she was unable to work. Her chronic condition has continued to date.

Claimant petitioner for a hearing before the Workers' Compensation Court to recover compensation she claims for the injuries she suffered in her fall on July 6, 1971. Hearing was before the Workers' Compensation Court on May 5, 1977 and thereafter, the respective parties presented proposed findings of fact and conclusions of law. On September 30, 1977, the Workers' Compensation judge made findings of fact and conclusions of law and order denying any relief to the claimant and thereafter entered judgment on said findings against the claimant. Claimant filed timely notice of appeal and her appeal was perfected in due course.

It should be noted that in the interim between July 16, 1971, the time of the first accidental fall, and January 28, 1974, the time of the second accidental fall, that the Workers' Compensation insurance carrier for the employer changed. With respect to the injuries sustained by the claimant in her second fall, claimant entered into a compromise settlement agreement settling in full any claims she might have for medical expenses or benefits arising under the act as against the second insurance carrier.

Claimant raises these issues for review by this Court:

1. Whether the Workers' Compensation Court erred in adopting

finding of fact no. 10 and conclusion of law no. 6, identical in language as follows:

"Claimant has failed to establish a casual relationship between her present complaints and the first injury suffered in 1971. With the exception of some residual damage to the left arm area as a result of the 1974 accident, the medical evidence indicates that there is no present disability related to the July 16, 1971 accident."

2. Whether the Court erred in admitting into evidence copies of medical reports which had not theretofore been served upon counsel for the claimant.

3. Whether the Court erred in denying penalties and attorneys fees to the claimant because defendant refused to pay further compensation arising out of the first accident.

We determine, after an examination of the records, that the finding of the Workers' Compensation Court that claimant failed to establish a causal relationship between her present complaint and the injury of July 16, 1971, and the further finding the medical evidence indicated there is no present disability, cannot stand. In coming to that conclusion, we are mindful of the appropriate scope of this Court's review of findings or decisions by the Workers' Compensation Court, and such will not be overturned if there is substantial evidence to support the findings or conclusions. *Skrukrud v. Gallatin Laundry Co., Inc.* (1976), 171 Mont. 217, 557 P.2d 278. However, findings and conclusions of the Workers' Compensation Court, as in the case of District Courts, may not stand when there is a clear preponderance of the evidence against such findings or conclusions when viewed in the light most favorable to the prevailing party. *Magelssen v. Mouat* (1975), 167 Mont. 374, 538 P.2d 1015; *Taylor v. Petranek* (1977), 173 Mont. 433, 568 P.2d 120, *Kasala v. Kalispell Pee Wee Baseball League* (1968), 151 Mont. 109, 439 P.2d 65; *Downing v. Crippen* (1943), 114 Mont. 436, 138 P.2d 575.

Rule 52(a), M.R.Civ.P., applicable to actions tried by District Courts and as well applicable to cases tried before the Workers' Compensation Court, provides that "* * * findings of fact shall not

be set aside *unless clearly erroneous*, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness * * *." (Emphasis added.)

■ We find except for one medical witness, all of the remainder of the medical evidence in this case is by deposition or by letter-report and particularly, the medical evidence relied on by the Workers' Compensation Court in reaching the decision here is in the form of letter-report only. With respect to that evidence, this Court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight to be given to such record testimony, as distinguished from oral testimony, where the trial court actually observes the character and demeanor of the witness on the stand.

A review of the medical evidence is necessary to illustrate why we determine the findng of the Workers' Compensation Court on causal relationship and present disability must be set aside.

The medical witness who testified on the stand before the Workers' Compensation Court was Dr. E. W. Haaby, residing at Hardin, Montana. He stated Delilah Hert came to his office around August 1, 1971, following her accident of July 1971. He had never treated her before. When she came into the office, she was suffering from severe headaches, severe occipital pain, left shoulder pain and left arm pain, which was pretty general. She was suffering from nausea, vomiting and a stiff neck and was anxious. Claimant described to him the accident from which her injuries arose. In addition to her subjective symptoms, he found these objective symptoms: a great deal of paresthesia, and cervical muscles splinting in her neck with her neck so stiff she could hardly turn it. He could see the neck muscles were in spasm.

Claimant returned to Dr. Haaby's office on a number of occasions and each time, her major complaints were violent headaches, nausea, inability to work, pain in the left side of her neck and neuritis in her left arm.

She came into his office after her fall of January 28, 1974, and was "pretty anxious that day". Dr. Haaby testified she was "pretty

sore," but after a few days her symptoms remained the same as they had previously been, no worse or better, just about the same. He continued to treat her after she returned to work following the second fall and his observation was she was suffering from anxiety, enduring a great deal of pain, and walking around with her neck in a position so she could protect it at all times.

When asked as to his opinion, with reasonable medical certainty within his specialty, as to claimant's condition and the cause thereof, Dr. Haaby stated:

"I believe all the symptoms and complaints that she is talking about and the complaints are strictly due to the fall that she took in July 16, 1971 * * *."

Dr. Haaby further gave as his opinion, looking into claimant's future at the time of the trial, that she was not again going to be able to do any kind of a job where she could be on her feet and work the same amount of time. She could never put in 8 hours a day and he couldn't visualize her taking a job that she could handle effectively. He said this will be true for the remainder of her work expectancy.

On cross-examination, Dr. Haaby testified she was not suffering from hysterical conversion. It was established on his redirect examination if she were indeed suffering from hysterical conversion, that could be as disabling as an organically caused condition. Moreover, in his opinion, any hysteria she evinced was also caused by the injury of July 1971.

It is also noted Dr. Haaby filed an attending physician's report with respect to the accident of January 28, 1974 and in that report indicated to the Workers' Compensation Division that employee was suffering from a condition which pre-existed the accident.

There is in the Workers' Compensation case file a copy of a letter from Dr. Robert Dinapoli, apparently associated with the Mayo Clinic in Minnesota. In it, he reports "* * * there was no evidence of any organic neurologic disease responsible for her various pains and disabilities. * * *" However, he reports finding the same symptoms upon which Dr. Haaby made his finding. He reports, "* * *

She tended to hold herself in a rigid posture. There was a minimal reduction of the left gastrocsoleus reflex. She tended to give away on testing muscles in the left upper and left lower limbs. Neck motions were reduced in all directions * * *." This letter was not offered in evidence by either party and so we presume has no part in the decision of the Workers' Compensation Court, but we note its presence in the file as a part of the medical evidence pertaining to the claimant.

During the cross-examination of Dr. Haaby, respondents offered in evidence Respondents Exhibit No. 1 which brings about the most serious point of controversy on this appeal. Respondents Exhibit No. 1 consists of a letter dated April 18, 1974 by Dr. Perry M. Berg of Billings, addressed to the attorney for the employer, to which letter there is attached additional documents; (1) a letter from Dr. Lewis Robinson of Billings, Montana, respecting his examination of the claimant dated April 3, 1974; (2) some office notes of nerve conduction examination made by Dr. Robinson and; (3) an X-ray report by Dr. Grant P. Raitt, dated March 25, 1974. These documents comprising Respondents Exhibit No. 1 had not been filed theretofore with the Workers' Compensation Division, nor exchanged with opposing counsel, although Rule 10 of the Workers' Compensation Code requires all medical reports be filed with the Division, and that copies be exchanged with counsel. Objection was made to the offered exhibit insofar as the conclusion contained therein were concerned. The Court admitted the exhibit for whatever value as a medical report it might have.

In Respondents Exhibit No. 1, Dr. Berg notes he can find nothing to account for the symptoms evinced by claimant. Dr. Robinson concluded the vast majority of claimant's complaints were functional and not due to organic disease. However, the symptoms noted in his examination of her closely paralleled those of Dr. Haaby. Dr. Robinson found the neck was tender posteriorly with mild muscle spasms. He found the entire left arm was tender. She was tender at the subacromial bursa, at the ulnar groove, at the posterior aspect of the shoulder joint and the axilla. He found

positive evidence of thoracic outlet syndrome on both sides. He found all muscle movements in the left arm decreased, possibly because of pain, but probably because of functional disease. He found sensation was decreased in the entire left arm up to the shoulder in a non-anatomic distribution. Dr. Raitt's X-ray report is not material to the complaint of the claimant as the X-ray report related only to a chest examination conducted by Dr. Berg.

Following the trial, pursuant to stipulation, the deposition of Dr. Robert Wood of Billings was taken. He is a neurosurgeon practicing his specialty in Billings who had examined the claimant on February 25, 1976 on reference from another doctor. Dr. Wood described her history after the 1974 injury. She had seen Dr. Neil I. Meyer, who did a myelogram which turned out normal. She had been referred to the Mayo Clinic and has also been seen by Dr. Lewis Robinson of Billings. She continued having increasing left arm and neck pains. She developed numbness in the left hand, mainly over the third and fourth fingers with weakness in the left hand. She developed pain in the regional left shoulder blade and had to stop cervical traction because this increased her pain. In his neurological examination, he found she had mild restriction of the range and motion of her neck and indicated radicular pain down the left arm and up the occipital region of the head. He prescribed a nerve block be carried out. This was done and repeated, but the pain returned.

After three nerve blocks failed, he performed surgery on her in January 1977, doing a section of the left occipital nerve which gave her some temporary relief. He then gave his opinion as to why she continued to suffer pain:

"In my estimation, the truth of the problem with Mrs. Hert revolves around the fact that she sustained a significant injury, but in addition, Mrs. Hert is a woman with a chronic occipital tension syndrome, that is, she has a response to stress that produces tightness of her occipital musculature. In doing so she irritates these previously irritated nerves in the accident, and so she's in a vicious circle of chronic occipital tension syndrome and muscle

spasm aggravating the pain. I believe that's why her pains come back."

It was his opinion that the accident of July 16, 1971 was a causal factor for the complaints she had. There may have been some aggravation by her second injury, he said, but no doubt the first accident was the initial cause. It was also his opinion that it was not likely she would improve to a satisfactory point where she could return to work.

The only evidence produced at the trial which could be considered to sustain the findings of the Workers' Compensation Court, with respect to the causal connection and the extent of her injury, would be that medical information contained in Respondent's Exhibit No. 1. These letters had not been filed with the Workers' Compensation Court, nor exchanged with counsel in accordance with Rule 10 of the Court and since the authors of the letters were not produced at the trial, they are clearly hearsay. The exhibit was not entitled to be considered as having any evidentiary value by the Workers' Compensation Court. We have said:

"We note the rules of evidence are more relaxed in an administrative proceeding than in a court of law. Section 92-812, R.C.M. 1947; *Ross v. Industrial Accident Board*, 106 Mont. 486, 80 P.2d 362, *Bergan v. Gallatin Valley Mfg. Co.*, 138 Mont. 27, 353 P.2d 320. However, these rules will not be relaxed to the point where due process of law and the fundamental rights of the injured workmen are disregarded." *Rumsey v. Cardinal Petroleum* (1975), 166 Mont. 17, 22, 530 P.2d 433, 436.

Even if the material in Respondents Exhibit No. 1 was properly considered by the Workers' Compensation Court, the material would not sustain the findings made by the court. While those reports included in the exhibit referred to "functional" problems of the claimant, nothing in the letters indicate the functional condition was not caused by or aggravated by the first accident. It is clear and unrebutted in the evidence that from July 16, 1971 to the time of the trial, claimant has had continuing problems with her neck and left arm for which she has consistently taken drugs on the

prescription of doctors, and has consistently sought medical help. Her condition prior to her fall of January 28, 1974, was essentially the same as it was prior to the time of the trial. In other words, the aggravation, if any, of the accident of January 28, 1974 had ceased and she had returned to the original chronic difficulties that resulted from the July 16, 1971 accident. The letter of Dr. Dinapoli, to which we have earlier adverted, does not change this conclusion.

At the opening of the trial, the Workers' Compensation Court announced it would take judicial notice of the material in the Workers' Compensation Division file. This statement however does not give the Workers' Compensation Court the authority to take judicial notice of the material contained in Dr. Dinapoli's letter, nor any other medical record, when the material is not presented for testimony at the trial, either by deposition or in person. Judicial notice extends only to non-adjudicative facts (Rule 201(a) and (b) R.R.Evid.).

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Rule 201(a) and (b), F.R.Evid.

Disputed medical conclusions by doctors contained in medical reports cannot be judicially noticed. It should be remembered judicial notice is intended to save time and expense by not requiring formal proof for *undisputed facts.* Judicial notice cannot supply evidence in the form of unsworn hearsay testimony in letters, absent agreement of the parties.

Any doubt after all the evidence has been considered should be construed for the compensation claimant when the weight of evidence is in favor of the worker. *Ness v. Diamond Asphalt Company* (1964), 143 Mont. 560, 393 P.2d 43. The clear convincing weight of the evidence in this case is the physical condition of the claimant at the time of trial was causally connected to the accident of July 16, 1971, and that her condition has become permanently disabling. We therefore reverse and remand this case

to the Workers' Compensation Court with instructions to find that the physical condition of the claimant at the time of trial was causally connected to the first accident and at the time of the trial, she was permanently disabled. The Workers' Compensation Court shall conduct such further proceedings as are necessary to determine the benefits claimant is entitled to receive and for further consideration by that Court as to whether the claimant is entitled to penalties and attorney fees (including appeal fees) in the light of this decision. Usual appeal costs to the claimant.

Reversed and remanded with instructions.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON and SHEA concur.