No. 81-179

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

TERRY JONES,

Claimant and Appellant,

vs.

ST. REGIS PAPER COMPANY, Employer and
ST. REGIS PAPER COMPANY,

Defendant and Respondent.

Appeal from:   Workers' Compensation Court
               Hon. William Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Fennessy, Crocker and Fennessy, Libby, Montana

    For Respondent:

        Stephen C. Berg, Kalispell, Montana

Submitted on briefs: October 1, 1981

Decided:    DEC 3 1 1981

Filed:  DEC 31 1981

_____
                          Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Claimant appeals from a judgment of the Workers' Compensation Court upholding defendant's denial of workers' compensation benefits. The sole issue before this Court is whether there was substantial evidence to support the Workers' Compensation Court's judgment that claimant did not suffer a compensable injury within the meaning of the Montana Workers' Compensation Act, section 39-71-119, MCA.

We reverse the judgment of the Workers' Compensation Court.

Claimant is a man in his late thirties with a high school education and a year of college. He worked as a logger in the CETA program in 1976, when he was struck by a falling tree and injured his back. In 1977 he was hired by St. Regis Paper Company in Libby, a lumber company enrolled under Plan I of the Workers' Compensation Plan. In 1978 he was off the job for several months because of back problems allegedly caused by an injury at work which he believed might have aggravated the back injury he suffered in 1976. Defendant denied liability and claimant petitioned the Workers' Compensation Court in September of 1979. On August 5, 1980, that court denied claimant's petition for failure to afford defendant proper notice. Claimant did not appeal. Judicial notice was taken of the prior claim by the Workers' Compensation Court during its consideration of the present claim. Claimant's back problems caused him to miss several months of work during spring and summer of 1978. His condition was diagnosed as a "protruding disc" and claimant was given medication for pain and to relax his muscles. He returned

to his work as a lumber grader in August of 1978, under a doctor's orders that he do no heavy lifting. A helper was assigned to do any heavy lifting which was necessary during the month before the restriction was suspended. Claimant states that his back hurt him constantly from the time of the alleged injury in March of 1978, and he frequently took valium to control the pain.

Claimant's job required him to turn over pieces of green lumber with his left hand, and grade them, as they were conveyed along a waist-high table. The pieces of lumber varied in length from eight to over twenty feet and in weight from several pounds to well over one hundred pounds. Occasionally there was a "jam-up," and claimant was required to jump up onto the table and lift out the jammed boards. He also performed some cleanup and maintenance work around his machine when there was time. When possible, claimant performed his lifting from a "duck-squat" position to protect his back from pain and stress.

On June 28, 1979, claimant was examined by Dr. Bohlman of Libby for "acute low back pain which [claimant] said came on without provocation." Dr. Bohlman deposed that claimant ". . . stated that he had had this in the past several times, rather severely. . ." Dr. Bohlman treated him with valium and advised claimant to use heat on his back and rest his back.

Claimant testified that, near the end of his shift in the early morning of August 21, 1979, he was turning a heavy piece of lumber when he felt a sudden, sharp pain in his back, so severe that it immobilized him for three to five minutes. When the pain subsided enough that he could move, claimant said, he resumed his work for an hour or so, with

as little activity as possible, until his shift ended, at approximately 2:00 A.M. He returned home without notifying a supervisor of any accident, took valium and went to bed. When the pain was still present in the morning, claimant attempted to contact his foreman, Gary Hansen, to let him know he would miss work that day. When he was unable to contact Hansen, claimant called Jerry McKay, maintenance supervisor of the plant, and told McKay he had hurt his back and was going to see a doctor. The facts are disputed at this point. Claimant cannot recall mentioning an on the job injury, and does not recall McKay's asking him about an accident or injury at work. McKay declared in his deposition:

> "I distinctly recall asking him if he had an accident at work. . . His reply was that he didn't have an accident at work. . . I don't know if he said he did it doing something else. . ."

McKay contacted claimant's foreman, Gary Hansen, when Hansen came on shift late that afternoon. Hansen deposed that McKay told him an accident report would not be necessary because "apparently he did it at home . . . moving something, a refrigerator or something." Defendant testified that he had not moved a refrigerator, or any other heavy object, away from the job.

Claimant saw Dr. Bohlman in Libby August 21, 1979, and Dr. Bohlman immediately admitted him to St. John's Lutheran Hospital in Libby, where he spent six days in traction without any significant improvement. Dr. Bohlman's records do not mention whether claimant's back injury occurred at work, nor does he remember that the matter was discussed, although he stated in his deposition that it was his "usual practice to specifically inquire" as to the cause of a patient's medical problems. The claimant testified that he

probably said his back was injured "that night," but he could not recall specifically stating that he had sustained an injury on the job.

Claimant testified that at 4:15 P.M. August 21, 1979, just before going into the hospital, he called Gary Hansen and informed him he had hurt his back "that night" and was going to be hospitalized. Gary Hansen, in his deposition, denied that claimant contacted him; their only communication, according to him, occurred on August 30, 1979, when Hansen called to inquire after claimant's condition. At that time, no reference was made to the cause of claimant's injury. Gary Hansen's personal logbook, for the days following claimant's alleged injury, is marked with an "A," which Hansen said is the code for an accident suffered by an employee off the job.

Claimant hitchhiked to Kalispell on August 27, 1979, and spent ten days in traction under the care of Dr. Ingham, again without significant relief of his discomfort. Dr. Ingham suggested that a myelogram and even a spinal fusion might be necessary; he referred claimant to Dr. Lynch in Spokane. Dr. Ingham's report indicated that claimant had back pain, went to work, and suffered increasing discomfort during his shift. The insurance report from the Kalispell Orthopedic Clinic, dated September 6, 1979, stated that the back injury was caused by a "sawmill accident" on August 21, 1979.

Dr. Lynch in Spokane recommended a chairback brace, and, when that provided some relief, he recommended a lumbar fusion. His report stated that claimant's back injury occurred when claimant was working at St. Regis Paper Company. Surgery was performed by Dr. Shanks of Spokane on

December 19, 1979. Dr. Shanks' report also noted that claimant sustained his injury while employed as a machine operator at St. Regis Paper Company. Dr. Shanks suggested claimant undertake a post-surgical therapy program to build up the muscle strength in his lower back and recommended that claimant not return to his previous employment until his back muscles were stronger. Dr. Shanks deposed that during late winter and spring of 1980, claimant was "totally disabled" and that, as late as July of 1980, his muscle strength had not improved to the point that he was ready for working. He further deposed that, from a medical standpoint, claimant should be permanently restricted -- he should do no "heavy lifting, repetitive bending-type activities."

Dr. Shanks was questioned about claimant's "degenerative disc disease." He answered:

> "'[D]isease' itself is a misnomer. It's more associated with chronic trauma or acute trauma with ruptured discs and sudden narrowing of the disc space or a narrowing of the disc spaces due to degeneration of the disc due to repeated small trauma. . . [T]rauma is injury either major or minor or repetitive-type injuries."

Dr. Shanks believed claimant's condition was present prior to August, 1979. He stated that the continual bending and lifting done by claimant in his job at St. Regis Paper Company would cause stress on the lower back, particularly when claimant lifted boards to clear a jam. He said that such stress could cause degeneration of an existing degenerative disc condition and could cause suddenly increased back pain.

Claimant filled out a report of occupational injury on August 31, 1979; the report was received by St. Regis Paper Company on September 6, 1979, well within the 60 day notice requirement set forth in section 39-71-603, MCA.

On October 30, 1979, Ken Stahl, personnel specialist with St. Regis Paper Company, notified claimant that St. Regis did not recognize liability for his back problem and refused liability for benefits under the Workers' Compensation Act. Claimant brought this action in the Workers' Compensation Court on August 14, 1980. The matter was heard on October 8, 1980, and on February 11, 1981, the court entered its findings of fact, conclusions of law and judgment. A motion for rehearing was denied and claimant appeals to this Court. Claimant raises only one issue: Whether there is substantial evidence to support the judgment of the Workers' Compensation Court that claimant did not suffer a compensible injury as defined by the Workers' Compensation Act, section 39-71-119, MCA.

In its findings of fact, conclusions of law and judgment dated February 11, 1981, the Workers' Compensation Court found:

"There is no medical evidence to support the proposition that the claimant suffered an injury within the meaning of 39-71-119 MCA while in the employ of St. Regis Paper Company.

"The preponderance of the credible evidence indicates that claimant's low back pain pre-dated his visit to Dr. Bohlman and subsequent hospitalization on August 21, 1979 and was not aggravated by any event occurring on the job on that date. The claimant apparently did not consider his pain that day as being a result of an on the job incident, in view of his denial to Mr. McKay and his failure to report an injury to Dr. Bohlman, Dr. Ingham or Gary Hansen.

"At all times pertinent hereto the claimant was knowledgeable in the basic functioning of the workers' compensation system with regard to the reporting of accidents and injuries occurring on the job. He had been a shop steward for his union and had attended many safety meetings at which the subject of the necessity of reporting accidents was discussed in detail. His denial to Mr. McKay of the occurrence of an accident or injury, coupled with his failure to inform his physicians and

Gary Hansen of such an event, together with past medical evidence of low back pain being experienced seemingly without provocation all constitute evidence that no injury within the meaning of 39-71-119 MCA occurred in this case."

The bulk of defendant's argument is devoted to demonstrating that, because of claimant's failure to immediately notify his supervisors and physicians that he was injured in an accident on the job, there is substantial evidence that he did not suffer from "a tangible happening of a traumatic nature." Defendant also takes the position that claimant cannot consistently allege both that his injury developed gradually and that it was caused by a specific incident.

It is well established that when there is substantial evidence supporting the findings of the Workers' Compensation Court this Court will not disturb those findings on appeal. Little v. Structural Systems (1980), ____ Mont. ____, 614 P.2d 516, 518-519, 37 St.Rep. 1187, 1189. Stamatis v. Bechtel Power Co. (1979), ____ Mont. ____, 601 P.2d 403, 405-406, 36 St.Rep. 1866, 1869. However, in this case, the findings of fact included above, and the arguments of defendant are inconsistent with Montana case law and the undisputed facts set forth in claimant's testimony and in depositions by claimant's physicians.

Much emphasis is placed upon claimant's "failure" to notify his supervisors that he had been injured in an accident on the job. This failure is a crucial factor in the court's finding that claimant did not suffer an injury and is the foundation for defendant's argument on appeal. But the great preponderance of evidence indicates that, whether or not claimant believed he suffered an injury on August 21, 1979, whether or not he mentioned an injury to McKay and

-8-

Hansen and Drs. Bohlman and Ingham, he was and is incapacitated as a result of the trauma-induced, progressive degeneration of discs in his back, and that condition was aggravated by the unusual strain of his work.

The notice requirement in the Workers' Compensation Act, section 39-71-603, MCA, provides that no claim such as the one at bar may be considered compensable unless notice of the time, place, and nature of the incident is communicated to employer within 60 days. There is no requirement that an injured employee notify his supervisors of an accident or injury within hours or days of its occurrence, however desirable such notification may be. Claimant's notice to defendant that he had suffered an occupational injury was filled out by him on August 31, 1979, and received by defendant on September 6, 1979, less than three weeks after the alleged injury and well within the time provided by statute.

The evidence presented by defendant to support its argument that claimant did not suffer an industrial injury is relevant only to prove that for a few days after he left work claimant may not have believed he had suffered an industrial injury. Claimant's own testimony and his August 31, 1979, report indicate his confusion. Claimant testified that his back had caused him constant pain for more than a year prior to August 21, 1979, and that he was accustomed to taking valium to control the pain so he could go on working. He testified that when he completed his shift, he intended to go home, take some more valium and go to bed, as he had before. The back pain, while more severe than usual, was not new. On cross-examination, claimant was asked:

"Q. Why, then didn't you mention it to somebody before going home?

"A. Because I was in pain and couldn't find anybody . . . I figured if I go home and take some more valium I'd be all right . . . [I]f I felt good and was the same way I was before it happened, then I wouldn't need to do anything; I'd just keep on."

Dr. Bohlman's report and his deposition support claimant's testimony that he had suffered back pain for some time before he sought Dr. Bohlman's help in June of 1979. This evidence is consistent with Dr. Shanks' deposition, which was uncontradicted by defendant, that the lifting and bending done by claimant at work would stress his back and was likely to cause degeneration and aggravation of an existing condition. Furthermore, Dr. Shanks' deposition indicates there was no inconsistency in claimant's statements that he had suffered back pain for over a year, when his back suddenly gave out as he lifted a heavy piece of lumber. Dr. Shanks stated that "just the lifting" would be enough to cause sudden aggravation and suddenly increased back pain.

The medical reports and depositions submitted by the physicians who examined and treated claimant show beyond doubt that claimant's injury was real. He suffered from a "protruding disc" in 1978, worked for over a year with increasing discomfort, and, after August 21, 1979, was diagnosed as having a "herniated disc" which required surgical fusion. He had not recovered to the point that he could resume work as late as July of 1980, and will probably never be able to return to his old job, or any other job requiring a similar amount of lifting and bending.

Defendant has not argued that claimant did not suffer a herniated disc; nor has defendant attempted to prove that claimant's back condition diagnosed in 1978 was not aggravated by his work. Both defendant and the Workers' Compensation

-10-

Court appear to have ignored the evidence indicating that claimant's work contributed to the herniated disc.

Ordinarily, this Court will not substitute its judgment for that of the Workers' Compensation Court in determining the weight and credibility to be given testimony. The reason for this is that this Court defers to the lower court's assessment of the demeanor and credibility of witnesses. Rule 52(a), M.R.Civ.P. However, when the critical evidence, particularly medical evidence, is entered by deposition, we have held that "this Court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight to be given to such record testimony, as distinguished from oral testimony, where the trial court actually observes the character and demeanor of the witness on the stand." Hert v. J. J. Newberry Co. (1978), 178 Mont. 355, 359-360, 584 P.2d 656, 659.

It is evident to this Court that the Workers' Compensation Court paid little heed to the evidence submitted by claimant's physicians, except to determine that Dr. Bohlman and Dr. Ingham had not noted that an on the job injury had been sustained by claimant on August 21, 1979. The findings of fact quoted above contradict the statements in reports by Dr. Lynch and Dr. Shanks that the injury was suffered by claimant during his work at St. Regis Paper Company. In finding of fact No. 16, the Workers' Compensation Court stated, "The preponderance of the credible evidence indicates that claimant's low back pain predated his visit to Dr. Bohlman and subsequent hospitalization on August 21, 1979 and was not aggravated by any event occurring on the job on that date" (emphasis supplied). That court's conclusion of law No. 2 states, "The evidence shows that claimant did not

-11-

suffer a compensable injury as defined by 39-71-119 MCA, nor an aggravation of a pre-existing condition on August 21, 1979 while employed by the St. Regis Paper Company." Evidently, the Workers' Compensation Court did not consider Dr. Shanks' deposition testimony which indicated that a series of minor traumas could lead to a condition such as that suffered by claimant.

Defendant dismisses Dr. Shanks' testimony as "equivocal," and tending only to establish that claimant's work "'could' have been caused by a traumatic experience along with other causes such as degenerative disc disease." We find Dr. Shanks' deposition more convincing. In addition to his definite statement quoted above, that degenerative disc disease was not a disease, but a condition associated with acute trauma, or "repeated small traumas," Dr. Shanks testified that the condition had, to the best of his knowledge, been present before August 21, 1979. After the type of work done by claimant was described to Dr. Shanks, the following dialogue took place:

"Q. Now, with that type of a [job] description, do you feel that there would be any kind of aggravation?

"A. There's probably going to be stress on the lower back with handling that kind of lumber. It's difficult to handle, and I think you do have to stress your back even though it's up high and you're not bending over so much. But just jacking it around is hard to do.

"Q. Okay. So, more than likely, that type of activity would cause some aggravation of the lower back?

"A. I would think it would, yes."

Counsel then described the work required to free a "jam-up," and asked:

-12-

"Q. Now, would that type of activity also aggravate his back?

"A. That would be even more so.

"Q. Even more so. Okay . . . Would an individual with this type of back condition which you have described be more susceptible to injury to his lower back than a person without this type of condition?

"A. Yes.

"Q. Now, would a person with this type of condition be susceptible to a sudden aggravation of the condition?

"A. Well, he could be, depending on the type of thing he was doing at the time. If he, say, was up on top of the table trying to straighten out a 2 x 12, or whatever that had gotten twisted, and he bent over and tried to pick that up, he might suddenly get increased back pain, yes.

"Q. Okay. Now, going back to my prior example of a description of his work, not on top of the table but in his normal operating position, lifting a heavy board, would that type of thing be consistent with a sudden aggravation of the back?

"A. Could be, yes. Same thing; just the lifting."

In Strandberg v. Reber Co. (1978), 179 Mont. 173, 175-177, 587 P.2d 18, 19, 20, this Court held that when it is proved medically possible that an industrial accident or injury aggravated a pre-existing condition, that proof is sufficient to establish a compensable disability. Similarly, in Viets v. Sweetgrass County (1978), 178 Mont. 337, 340, 583 P.2d 1070, 1072, we indicated that evidence that an accident aggravated a pre-existent condition is more reliable than evidence that an accident caused a disabled condition. In Hoehne v. Granite Lumber Company (1980), ____ Mont. ____, 615 P.2d 863, 865, 37 St.Rep. 1307, 1310, a case more nearly on point, we held that "a tangible happening" under section 39-71-119, MCA, could be "not a single isolated incident . . . but rather a chain of accidents or incidents, i.e., the

-13-

stacking of lumber on a daily basis." We cited approvingly Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 380-381, 546 P.2d 1055, 1058, which said:

> "Not only must claimant show an unusual strain, but the strain must result from a tangible happening of a traumatic nature . . . A tangible happening must be a perceptible happening . . . Some action or incident, or chain of actions or incidents, must be shown which may be perceived as a contributing cause of the resulting injury." (Emphasis supplied.)

The lines in Hoehne, supra, were clearly drawn. The sole difference was that one party believed that a gradually developing, job-related injury not attributable to one specific incident was an "injury," and the other believed it was not. This Court held that it was. The reasonable conclusion from this holding is that, if there is strong enough evidence that the gradually developing injury is job-related, it is an "injury" within the meaning of section 39-71-119, MCA, and is compensable, whether or not claimant states that there was a specific incident.

It is apparent that the Workers' Compensation Court did not believe claimant when he said he suffered a specific injury on August 21, 1979. Evidently that court did believe claimant's supervisors who deposed that claimant had denied there had been an accident on that date. Claimant's denial of an accident is not necessarily inconsistent with our conclusion that the clear preponderance of evidence indicates claimant suffered a series of small injuries in the year before his breakdown, which injuries were attributable to his work; those injuries aggravated a pre-existing back condition and resulted in a herniated disc, total disability, the subsequent spinal fusion, and a currently disabled condition, the extent of which has not yet been determined.

-14-

We are mindful that in Hoehne, supra, there was no dispute as to the cause of claimant's injury, whereas here, evidence has been presented that claimant's injury occurred off the job, while he was moving a refrigerator. Gary Hansen, the only person who mentioned claimant's moving a refrigerator attributed the remark to Jerry McKay. McKay's deposition makes no reference to causal factors; indeed, McKay could not recall such a discussion. Claimant himself testified that he had moved neither a refrigerator nor any other heavy object. We do not find Hansen's allegation reliable; it is uncorroborated hearsay which, if anything, is contradicted by McKay. It has little force when considered against the far more convincing and consistent explanation presented by claimant and strongly supported by Dr. Shanks' and Dr. Bohlman's depositions.

In summary, those findings of fact of the Workers' Compensation Court quoted above are directly contradicted by a preponderance of the evidence. Findings and conclusions of the Workers' Compensation Court, as in the case of District Courts, may not stand when there is a clear preponderance of the evidence against such findings or conclusions when viewed in the light most favorable to the prevailing party. Hert v. J. J. Newberry Co. (1978), 178 Mont. 355, 359, 584 P.2d 656, 658-659.

We reverse and remand this case to the Workers' Compensation Court for findings consistent with this opinion, and for a determination of the compensation to which claimant is entitled.

Justice

We Concur:

_Frank J. Haswell_
Chief Justice

_Gene B. Daly_

_Daniel J. Shea_

_John C. Sheehy_
Justices