No. 85-87

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

JACK BREWINGTON,

        Claimant and Appellant,

   -vs-

BIRKENBUEL, INC., Employer,

     and

EMPLOYERS' FIRE INSURANCE CO.,

        Defendant and Respondent.

_____

APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Utick & Grosfield; Andrew J. Utick, Helena, Montana

    For Respondent:

        William L. Baillie, Great Falls, Montana

_____

Submitted on Briefs: March 13, 1986

Decided: August 12, 1986

Filed: **AUG 12 1986**

_____
               Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Jack Brewington appeals a Workers' Compensation Court order which ruled that he is permanently partially disabled and awarded him 400 weeks of indemnity benefits under § 39-71-706, MCA. The issues on appeal are: (1) whether the lower court erred in ruling that appellant is not permanently totally disabled; (2) whether the lower court erred in awarding appellant 400 weeks of indemnity benefits rather than 500 weeks, the statutory maximum; and, (3) whether the lower court erred in failing to increase appellant's award by 20% under § 39-71-2907, MCA, because of respondent's allegedly unreasonable delay or refusal in paying benefits. We reverse and remand.

Appellant is 61 years of age, with an eighth grade education, and since 1960 has generally worked as a millwright, welder or carpenter. He also worked as a supervisor in a Missoula paper mill and he has worked for very short periods of time in other supervisory positions. These other supervisory jobs lasted only two to three days but details on how long he worked as a supervisor in the paper mill are lacking.

In December 1974, appellant suffered a compensable injury during the course of his employment with Birkenbuel, Inc. Due to the collapse of some scaffolding, appellant fell twelve feet to the ground landing on his right hand and shoulder. Appellant was able to work for some time after his accident although he experienced pain and difficulties with his coordination. Appellant stopped working for three weeks in March 1975 because of his injury but he resumed working

2

thereafter. Due to the injury, appellant suffered substantial pain in his neck, shoulder and arm. After working through 1975, 1976 and part of 1977, appellant suffered another industrial accident in July 1977 in which he sawed off the tips of two fingers on his left hand. Appellant has never worked since this second accident. Any disability he has from the second injury is not at issue in the instant case.

Dr. Nelson, appellant's treating physician, first examined appellant in August 1977. Dr. Nelson diagnosed appellant as having brachial plexus neuritis, bilaterally, but greater on the right side. Brachial plexus neuritis is an inflammation of the nerves in the neck and shoulders which may be brought on by direct blows or other injuries. Dr. Nelson later made an additional diagnosis of appellant as having thoracic outlet syndrome; i.e. a kinking or pinching of the artery and nerve as the shoulder and arm are elevated. These problems stem from appellant's 1974 accident. The doctor stated that appellant's condition had stabilized, and his healing period was over by October 1982. On September 7, 1982, appellant was examined by Dr. Cahill at the request of the respondent. Dr. Cahill agreed with Dr. Nelson's diagnosis.

In January, 1984, appellant described his health problems stemming from his 1974 accident. He stated that he had problems with his neck and if it was cold or if he bent over a lot, his neck would lock and he had a lot of pain; that he had pain all the time in his shoulder, ranging from pain "like a toothache" most of the time to a burning sensation at other times; that he had pain all the time, and no coordination most of the time, in his right arm; that any

3

physical work made his arm and shoulder worse; and that he could do woodworking for about 1½ hours before his right arm hurt him and he was required to stop.

Dr. Nelson testified at deposition that appellant's arm and shoulder injuries prevent him from doing laborious work; that is, "overhand, overhead, climbing, lifting, prolonged, repetitive usage of the arm and shoulder to any degree of strength." The doctor also recommended no prolonged bending by appellant or even long-distance driving. Dr. Nelson had no objections to appellant attempting to work as a foreman or supervisor. He stated that appellant should be in a "sedentary" occupation, which he described as something educative or supervisory or something appellant could take periodic breaks from if he had to do repetitive physical work. Dr. Nelson recommended vocational training for appellant as long as it would outfit him for light work. The doctor rated appellant's disability as a 10% impairment of the whole body. Dr. Cahill agreed with Dr. Nelson's impairment rating and conclusion that appellant was limited to a sedentary-type occupation.

After quitting work after his second accident, appellant attempted to secure work as a supervisor with several Lewistown construction firms and as a welding instructor. The construction firms indicated that he would have to be a working foreman and he felt he was physically unable to handle such a position. Appellant apparently did not inquire into many jobs which could be classified as "sedentary" because, as he stated, he would not accept any job unless he could earn $1,000 a month. He concluded that he could probably enter into a retraining program and find work if he could stay close to his wife, who is going blind.

4

Respondent hired National Rehabilitation Consultants to work with appellant to improve his employment chances. Appellant declined the services of the rehabilitative consultants and admitted that he did so because he had decided to try and obtain a lump sum settlement of his Workers' Compensation benefits, and because acceptance would have required him to travel far from Lewistown and his ailing wife.

Respondent accepted liability for appellant's first injury and initially paid him temporary total disability benefits. Respondent paid these benefits until February 1983. In January 1983, National Rehabilitation Consultants advised respondent that appellant had refused their services. Within a month, respondent stopped paying appellant temporary total disability benefits and began paying appellant lesser benefits for permanent partial disability. At the time of this change, respondent had reports from Dr. Nelson and Dr. Cahill which stated that appellant had reached his maximum point of recovery and could return to sedentary-type work.

Appellant disagreed with respondent's decision to pay him permanent partial disability benefits and, in June 1983, he filed a petition for a hearing with the Workers' Compensation Court claiming a right to permanent total disability benefits. The lower court held a hearing in January 1984, before a hearing examiner who disqualified himself for conflict of interest reasons and the parties stipulated that the judge could complete the case. The judge did not hear any of the testimony but rather issued his decision in January 1985 based on the record. The court concluded that appellant was 80% permanently partially disabled, based upon an impairment rating of 10% of the whole man. The court awarded appellant 400 weeks of benefits, 80%

5

of the statutory maximum of 500 weeks. The court refused to impose a 20% penalty upon respondent. This appeal followed.

The first issue is whether the lower court erred in finding that appellant is partially rather than totally disabled. The oft-cited standard of review is that,

"Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this court cannot overturn the decision." (Citations omitted.)

Metzger v. Chemetron Corp. (Mont. 1984), 687 P.2d 1033, 1035, 41 St.Rep. 1788, 1790; citing Nielsen v. Beaver Pond, Inc. (Mont. 1983), 661 P.2d 47, 49, 40 St.Rep. 489, 491.

But we have also stated that where the Workers' Compensation Court received the critical evidence by deposition "this Court, although sitting in review, is in as good a position as the Workers' Compensation Court to judge the weight to be given to such record testimony, as distinguished from oral testimony, where the trial court actually observes the character and demeanor of the witnesses on the stand." Lamb v. Missoula Imports, Inc. (Mont. 1984), 684 P.2d 498, 500, 41 St.Rep. 1414, 1416; citing Jones v. St. Regis Paper Co. (1981), 196 Mont. 138, 639 P.2d 1140; and Hert v. J. J. Newberry Co. (1978), 178 Mont. 355, 584 P.2d 656. The Workers' Compensation judge did not hear any oral testimony but decided the case on the same record that we have before us.

Appellant claims that he has a permanent total disability, which is defined at § 39-71-116(13), MCA, as:

[a] condition resulting from injury as defined in this chapter that results in

6

the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence.

In expanding upon the statutory definition, we adopted the following test in Metzger.

To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work-related injury. Spooner v. Action Sales, Inc., III Workers' Compensation Court Decisions No. 85 (January 24, 1983).

Metzger, 687 P.2d at 1035.

The Workers' Compensation Court concluded claimant failed to meet this burden. The court placed great emphasis on the fact that claimant has worked as a foreman, and could do such work again. The court incorrectly determined that claimant's normal labor market includes working as a foreman. As stated above, claimant's work as a foreman was extremely limited, amounting to two or three days on each of several occasions. This does not qualify the position of foreman as part of claimant's normal labor market. Even so, claimant contacted several construction firms and the rehabilitation services division in an attempt to secure employment as a foreman, but was unsuccessful. The only available jobs as a foreman required claimant to be a working foreman, a position claimant cannot perform.

Further, claimant testified he refused the services of a private rehabilitation firm of respondent's choice.

7

Although he admitted he could likely be retrained, he declined the services because acceptance would have meant moving far from Lewistown. Claimant's wife is going blind and he testified he needed to stay close to her in order to care for her. While weight is given to claimant's opinion that he could probably be retrained and that he voluntarily declined the services of the private rehabilitation firm, such testimony is not determinative. The medical evidence as well as claimant's lifetime work history support the conclusion that claimant was rendered permanently totally disabled by his industrial accident.

We conclude that claimant has met his burden as defined in Metzger. He testified in great detail concerning his injuries and limitations. He suffers constant pain in his right arm and right shoulder, and intermittent pain in his neck. Physical work worsens the condition. Dr. Nelson testified that claimant's injuries prevent him from doing laborious work, that is, "overhand, overhead, climbing, lifting, prolonged, repetitive usage of the arm and shoulder to any degree of strength." This is the very work claimant had done all his life.

He attempted to secure work as a supervisor with several Lewistown construction firms and as a welding instructor, but was unsuccessful. Claimant conclusively established an inability to perform the jobs in his normal labor market. Claimant meets the requirements of § 39-71-116(13), MCA, for permanent total disability.

Because of our ruling on the first issue we need not consider the second issue in this case.

Claimant's final issue is whether the lower court erred in failing to increase his award by 20% under § 39-71-2907,

MCA, because of respondent's allegedly unreasonable delay or refusal to pay benefits. We hold claimant is entitled to the 20% penalty.

The Workers' Compensation Court concluded:

> 6. Under these facts the penalty provided for under § 92-824.1 R.C.M., now MCA § 39-71-2907 (1983), does not apply. Reducing claimant's benefits from temporary total to permanent partial because the claimant refused to work with a private rehabilitation firm is unreasonable. However, from the Court's record, it appears that the insurer coincidentally had sufficient information allowing it to reduce the claimant's benefits from temporary total to permanent partial.
>
> . . .
>
> The defendant is not without a remedy if rehabilitation is appropriate and the claimant refuses to participate. The proper procedure is delineated in MCA § 39-71-1005. This procedure was not followed in the case at bar.

The lower court essentially concluded that respondent's actions would have been unreasonable had the record not supported the conclusion that claimant was permanent partial, not permanent total. It follows that since we now hold that claimant is permanent total, he is also entitled to the 20% penalty. Respondent reduced claimant's benefits in retaliation for his refusal to work with a private rehabilitation firm. Such action is unreasonable. Respondent should have followed the procedure delineated in § 39-71-1005, MCA. Claimant is entitled to a 20% penalty pursuant to § 39-71-2907, MCA.

Reversed and remanded to the Workers' Compensation Court to enter judgment for the claimant on his claim of permanent total disability, and to award claimant a 20% increase in his award pursuant to § 39-71-2907, MCA.

_____
Justice

9

We Concur:

_____
Chief Justice

*John Conway Harrison*

*Frank I. Morrison*

*John C. Sheehy*

_____

_____
Justices

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

Appellant must prove, by a preponderance of the probative, credible evidence, that he is entitled to permanent total disability benefits. Dumont v. Wickens Bros. Const. Co. (1979), 183 Mont. 190, 598 P.2d 1099. This he has not done.

To establish that he is permanently totally disabled under the Metzger test cited in the majority opinion, the appellant must show a complete inability to perform the employment and duties associated with the jobs constituting his normal labor market. Although appellant is clearly permanently disabled, he has not satisfied the Metzger standard for permanent total disability. There are three main problems with the majority opinion, which simply glosses over the voluminous evidence in this case.

First, the only expert medical opinions entered into evidence tend to show that appellant is not permanently totally disabled. Dr. Nelson diagnosed appellant as having a 10% impairment of the whole body. He testified that appellant should be in some type of sedentary employment (primarily educative or supervisory, or doing something, if repetitive, from which he could take breaks periodically). Dr. Cahill also rated appellant as having a 10% impairment of the whole body. Dr. Cahill's opinion in 1982 was that:

> The patient's present physical condition
> shows . . . he has stabilized and has
> reached a maximum point of recovery. I
> do think he would be able to return to
> work, but I think that heavy lifting and
> using his upper extremities excessively
> other than for writing and desk work
> would be very difficult for him.

Second, the majority finds that appellant's normal labor market does not include working as a foreman. This finding is perplexing as it runs against the majority's recitation of facts and the appellant's testimony. The facts stated in the majority opinion are that:

> [Appellant] also worked as a supervisor in a Missoula paper mill and he has worked for very short periods of time [two to three days] in other supervisory positions . . . details on how long he worked as a supervisor in the paper mill are lacking.

It is unclear how the majority can find that appellant's normal labor market does not include a foreman position when the majority is unsure how long he worked as a foreman.

Appellant's testimony was as follows:

> Q. Did you ever work in any of these occupations strictly as a supervisor?
>
> A. I was a supervisor in the paper mill in Missoula for awhile.
>
> . . .
>
> Q. Other than that job, did you ever work strictly as a supervisor?
>
> A. Not for any length of time, no.

The testimony is simply unclear as to how long appellant worked as a supervisor. Appellant has not established what his normal labor market is. Appellant did attempt to find employment as a supervisor with three or four construction firms in Lewistown. This indicates that appellant considers supervisory positions as within his normal labor market and that he believes he can perform the duties of those positions.

Third, appellant explicitly stated that he would not accept any job unless he could earn at least $1,000 a month. Although appellant conceded that he had worked as a laborer,

12

he stated that he had not applied for work at any of the shops or stores, such as hardware stores, convenience stores or gas stations, in his hometown of Lewistown. Appellant did not introduce evidence showing a complete inability to perform these jobs or the supervisory jobs.

The majority states that appellant has conclusively established an inability to perform the jobs in his normal labor market. The record does not support this assertion. The record does show that appellant refuses to even consider any job paying less than $1,000 a month. The majority opinion has dispensed with the requirements of the Metzger test.

Lastly, I dissent from the majority's imposition of a 20% penalty upon the respondent under § 39-71-2907, MCA. That section allows the lower court to increase an award by 20% because of an insurer's unreasonable delay or refusal to pay.

> Whether an action is "unreasonable" under this statute is a question of fact which is subject on appeal to the limited review of the substantial evidence test. [Citation omitted.] If there is substantial evidence to support a finding of "unreasonableness", this Court cannot overturn the finding.

Wight v. Hughes Livestock Co., Inc. (Mont. 1981), 634 P.2d 1189, 1192, 38 St.Rep. 1632, 1636. The same standard of review applies to a lower court's finding of reasonableness.

Substantial credible evidence supports the lower court's finding of "reasonableness" and its refusal to impose the penalty. The majority finds that respondent acted unreasonably because respondent reduced appellant's benefits in retaliation for appellant's refusal to work with a private

13

rehabilitation firm. The opinion cites no evidence directly supporting this assertion.

Peter McGraw, a claims manager and insurance adjuster who worked on appellant's claim, testified as to why the insurer had reduced appellant's benefits from permanent total to permanent partial. McGraw stated that the insurer reduced the benefits because the insurer had received medical reports from Dr. Nelson and Dr. Cahill that stated: (1) appellant's condition had stabilized and he had reached his maximum point of recovery; (2) that appellant was able to go back to a sedentary-type of work; and (3) that appellant had a 10% impairment rating of the whole body. There was evidence at the hearing that the insurer sent a letter to appellant which stated that the reduction in benefits was due to the doctor's reports. Moreover, McGraw specifically refuted the suggestion that the insurer reduced appellant's benefits as retaliation. There is substantial, credible evidence which supports the lower court's refusal to impose the 20% penalty. The reduction of benefits was a reasonable action and no penalty should be imposed.

_____
Justice

Mr. Justice Fred J. Weber:

I join in the foregoing dissent of Mr. Justice Gulbrandson.

_____
Justice

Mr. Chief Justice J. A. Turnage:

I also join in the foregoing dissent of Mr. Justice L. C. Gulbrandson.

_____
Chief Justice