No. 86-555

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

CHARLES STERNS,

Appellant,

-vs-

WALTER DUDLEY and MONTANA STATE COMPENSATION
INSURANCE FUND,

Respondents.

APPEAL FROM: The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ian Christopherson, Missoula, Montana

For Respondent:

Honorable Mike Greely, Attorney General
Clay R. Smith, Assistant Attorney General
Helena, Montana

Submitted on Briefs: March 12, 1987

Decided: August 11, 1987

Filed: AUG 11 1987

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Charles Sterns appeals a Workers' Compensation Court order which awarded him 200 weeks of permanent partial disability benefits. The issues on appeal are, (1) whether the court correctly concluded that Sterns is not permanently totally disabled; (2) whether the court erred in failing to award 500 weeks of permanent partial disability benefits to Sterns; (3) whether the court erred in refusing to impose a 20% penalty upon respondent Montana State Compensation Insurance Fund (State Fund) for insurer unreasonableness; and (4) whether the court erred in failing to award Sterns his costs and attorneys' fees. We affirm.

In 1984, Sterns suffered two separate, compensable industrial injuries while working for Walter Dudley as a "faller." Basically, Sterns' job was to cut down trees and help to prepare them for transportation to lumbermills. In the first accident, in January 1984, Sterns suffered an injury to his lower back and left hip when a tree top fell on him. He received temporary total disability benefits for a relatively short period after that injury and he eventually returned to his job. In June 1984, Sterns suffered another injury when his chain saw kicked back and cut into the middle finger of his left hand. He also received temporary total disability benefits after that accident. Sterns returned to work after the second accident but after several months on the job, he quit work on the advice of his doctor. He has not worked since October 1984. After a dispute between Sterns and the State Fund, Sterns petitioned the Workers' Compensation Court for a hearing, mainly to determine whether or not he was permanently totally disabled. Following discovery and a hearing, the hearings officer filed his

proposed judgment in October 1986. The Workers' Compensation Court adopted the hearings officer's findings of fact and conclusions of law and, in October 1986, entered judgment in accordance with the proposed judgment. The court ruled that Sterns was not entitled to permanent total disability benefits, that Sterns was entitled to 200 weeks of permanent partial disability benefits, and that Sterns was not entitled to a 20% penalty. The court also refused to award costs and attorneys' fees to Sterns. This appeal followed.

The standard of review is clear as to the first issue; i.e., whether the court erred in ruling that Sterns is not permanently totally disabled.

> "Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this court cannot overturn the decision." (Citations omitted.)

Brewington v. Birkenbuel, Inc. (Mont. 1986), 723 P.2d 938, 940, 43 St.Rep. 1458, 1461. Section 39-71-116(13), MCA, defines a permanent total disability as:

> [a] condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence.

3

In Metzger v. Chemetron Corp. (Mont. 1984), 687 P.2d 1033, 1035, 41 St.Rep. 1788, 1790, we elaborated on the statutory definition and stated,

> To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work-related injury.

At the hearing on his petition, claimant testified to the continuing effects from both his work-related injuries. From the first injury, claimant testified that he still suffers from pain and numbness in the lower back and hip region. He also testified that sitting or riding in a car for extended periods aggravates his back injury. Dr. Sousa, an orthopedic surgeon who examined Sterns, diagnosed his back condition as a neuropraxia of the cutaneous nerves in the lumbar region. He described the condition, in layman's terms, as a stretching or bruising of the nerves in the skin. Dr. Sousa made no objective findings of injury, felt that Sterns had no impairment rating for his back injury and stated that this injury had reached maximum healing. Dr. Russo, a neurologist, also examined Sterns and described the back injury as a subjective complaint with no objective findings. He stated that the injury could conceivably limit Sterns' ability to lift heavy objects.

Sterns' second injury involved a chain saw cutting into his left middle finger. The injury required surgery and resulted in a loss of range of motion or flexibility with the finger. Dr. Sousa assigned an impairment rating of 56% for the finger, 11% for the left hand, 10% for the upper extremity and 6% for the whole man. Sousa described the

4

"whole man" impairment rating as a 6% whole man permanent partial impairment based upon the AMA guidelines. (Emphasis added.) Doctors Russo and Sousa generally agreed that Sterns should avoid any employment which requires repetitive heavy gripping of the left hand. Since his high school days seventeen years ago, Sterns had worked almost exclusively as a timber faller in the Missoula and Thompson Falls area.

There is extensive evidence, some of it conflicting, bearing on the issue of permanent total disability. Because substantial credible evidence supports the lower court's ruling, we affirm the court's determination that Sterns is not permanently totally disabled. We agree that he has not established by a preponderance of the credible evidence that he has no reasonable prospect of finding regular employment of any kind in the normal labor market.

In September 1985, the Missoula Community Hospital Rehabilitation Center (Rehab Center) conducted a five-day vocational rehabilitation evaluation of Sterns. The Rehab Center's report (1) considered Sterns a competent worker capable of training successfully for a large number of occupations, (2) stated that he appears to have the potential of functioning effectively in a variety of occupations, and (3) rated Sterns as above-average in work speed, accuracy, intellectual functioning, academic skills and clerical aptitude. The International Rehabilitation Associates, Inc. (IRA) conducted a labor market survey to determine Sterns' vocational opportunities in the Thompson Falls area. IRA considered those vocations listed as possibly appropriate for Sterns by the Rehab Center. IRA conducted an extensive survey and concluded that "[w]hile the job market in the Thompson Falls are [sic] appears depressed, there are, in fact, vocational opportunities for an individual with [Sterns'] documented physical and mental capabilities . . ."

5

Norm Johnson, a counselor for the Montana Job Service in Missoula, testified for the claimant and stated that Sterns, after his injury, could compete in 10% of the labor market in a three county area surrounding Thompson Falls. Johnson also testified (1) that in his counseling work, jobs are classified as light duty work, sedentary work or heavy duty work; (2) that he believed Sterns could handle some jobs entailing light duty work and some entailing sedentary work; (3) that based on Sterns' disability, Johnson believed Sterns could perform certain jobs in lumber manufacturing, the retail trade industry and the service industry; and (4) that Sterns obviously is not that unemployable. This testimony, the testimony of Sterns' own witness, supports a conclusion that he is not permanently totally disabled. Given the above cited evidence, we defer to the lower court's ruling that Sterns has not shown by a preponderance of the evidence a complete inability to perform the jobs which constitute his normal labor market.

The second issue is whether the lower court erred in awarding claimant 200 weeks of permanent partial disability benefits rather than 500 weeks. Claimant elected to proceed under § 39-71-703, MCA, in computing his permanent partial disability benefits. That statute provides:

> (1) Weekly compensation benefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars, subject to a maximum weekly compensation of one-half the state's average weekly wage.
>
> (2) The compensation shall be paid during the period of disability, not exceeding, however, 500 weeks in cases of partial disability. However, compensation for partial disability resulting from the loss of or injury to

6

> any member shall not be payable for a
> greater number of weeks than is specified
> in 39-71-705 for the loss of the member.

The lower court awarded claimant permanent partial benefits under the second sentence of § 39-71-703(2), MCA, which provides compensation for injury to a member and refers to the injury scheduled under § 39-71-705, MCA. Section 39-71-705, MCA, provides a 200 week benefit period for the loss of one hand. The lower court reasoned that claimant's finger injury affected the use of claimant's entire hand and, therefore, it awarded 200 weeks of benefits. Claimant argues that his disability resulted also from his back injury and that he should not be limited to the § 39-71-705, MCA, scheduled benefits for one hand. He argues that he is entitled to 500 weeks of benefits under the first sentence of § 39-71-703, MCA. We disagree. Sterns elected to proceed under § 39-71-703, MCA, which compensates a claimant for his actual diminution in earning capacity. The evidence in this case established that Sterns' loss of earning capacity resulted from his finger injury and the resulting inability to effectively use his left hand. Sterns did not establish what loss of earning capacity, if any, he experienced from his back injury. Moreover, there was substantial credible evidence tending to show that Sterns suffered no loss of earning capacity from the back injury. We note that after his back injury he returned to his former job after only two weeks and worked apparently without difficulty until he injured his finger. Moreover, the Rehab Center's report states that;

> [Sterns] reported that he occasionally
> continues to experience low back pain,
> however, he did not consider this to be a
> vocational handicap. He referred only to
> his recent hand injury . . .

7

Moreover, Dr. Sousa testified by deposition that from his evaluation of the back injury, he saw nothing objective which would prevent Sterns from being employed.

Finally, claimant's own evidence tended to show that his loss of earning capacity resulted from his finger injury. The lower court properly awarded him benefits for that loss. Because substantial credible evidence supports the lower court's ruling, we will not second guess the determination that claimant suffered no loss of earning capacity from his back injury.

The third issue is whether the court erred in refusing to impose a 20% penalty on the insurer. Section 39-71-2907, MCA, authorizes the workers' compensation judge to increase a claimant's award by 20% when payment of compensation has been unreasonably delayed or refused by the insurer. Claimant argues that the insurer unreasonably refused to concede that he was permanently totally disabled. We have already upheld the ruling that claimant was not permanently totally disabled and, therefore, we affirm the lower court's refusal to impose the 20% penalty.

Lastly, claimant asserts that the lower court erred in failing to award him his costs and attorneys' fees. Sterns bases his assertion upon § 39-71-612, MCA, which allows a claimant costs and attorneys' fees in certain cases if the claimant is successful in a dispute with the insurer. Sterns has been unsuccessful below and on appeal and he is not entitled to costs and attorneys' fees under that section.

Affirmed.

_____
Justice

8

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

9

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent.

The record shows that the claimant is receiving temporary total benefits for his injury. The Workers' Compensation Court has ordered these reduced to 200 weeks of permanent partial disability benefits. The majority of this court mistakenly agrees with that conclusion.

The record shows that claimant has spent his adult life as a logger. Dr. Alberston, the treating physician concluded "that it was unsafe for claimant to work as a sawyer." That is the also conclusion of Dr. Russo and Dr. Sousa. That is the testimony of the claimant. Claimant has spent his entire working life as a logger. He is now totally disabled from doing that work. He is without any new knowledge or skills to take the jobs that various work experts say is available to him. He is required to prove "by a preponderance of the credible evidence" that he cannot find a job in his area that is, according to the testimony of the state job expert, depressed. He has reported to the job service for work but has not found a job. He sought retraining and has been accepted at the University of Montana in accounting. But because he has not proven "by a preponderance of the credible evidence" he cannot find a five dollar an hour job to replace his $15.35 an hour job, he only qualifies for 200 weeks of "permanent partial disability." I cannot agree.

- 9 -

I would reverse the judgment of the Workers' Compensation Court and send this back for a determination that the claimant is totally disabled and remains so until he is able to perform work he has been trained to do.

_____
Justice

I concur in the dissent of Mr. Justice William E. Hunt, Sr.

_____
Justice

- 10 -