No. 79-16

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

RICHARD RAYMOND HOEHNE,

Claimant and Respondent,

vs.

GRANITE LUMBER CO., Employer,
ALASKA PACIFIC ASSURANCE COMPANY,

Defendants and Appellants.

_____

Appeal from: Workers' Compensation Court,
Hon. William Hunt, Judge presiding.

Counsel of Record:

For Appellants:

Utick and Grosfield, Helena, Montana

For Respondent:

H.L. McChesney, Missoula, Montana

_____

Submitted on briefs: April 3, 1980

Decided: JUL 2 8 1980

Filed: JUL 2 8 1980

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The Workers' Compensation Court found that claimant-respondent Richard Hoehne suffered a compensable injury arising out of and in the course of his employment with Granite Lumber Company. Alaska Pacific Assurance Company (Alaska Pacific), Granite Lumber's insurance carrier, appeals.

Richard Hoehne commenced employment with Granite Lumber Company in Phillipsburg, Montana, in early March, 1978. His job consisted of removing 2" by 4" studs from a conveyor system and stacking them in a pile.

About two weeks after commencement of the job, claimant's fingers started going numb which caused pain and resulted in sleeplessness. Hoehne continued to work and the pain in his wrists and arms steadily increased. Mr. Hoehne had no prior history of medical problems with his hands and it is unquestioned that his condition was caused by the continual strain involved in lifting and stacking lumber.

Claimant consulted with Dr. Cunningham, a local physician who in turn referred him to Dr. Cooney, a neurologist in Missoula, Montana. Dr. Cooney examined the claimant on May 10, 1978, and diagnosed the condition as a "compressive neuropathy of the median nerves in the carpal tunnels bilaterally" (i.e. bilateral carpal tunnel syndrome).

Hoehne was then referred to Dr. Gary, a Missoula neurosurgeon who performed surgery on the claimant's hands on May 16, 1978. He was able to commence working in other capacities in late June or early July, 1978. No permanent disability resulted from the injury and Mr. Hoehne is now able to do the same type of work as he was able to do prior to his employment with Granite Lumber.

Richard Hoehne filed a claim dated May 7, 1978, with the Division of Workers' Compensation. He sought reimbursement of medical expenses and temporary total compensation benefits from March 16, 1978, through June 19, 1978. Alaska Pacific denied

- 2 -

liability for the injury on the basis that claimant had not suffered a compensable injury pursuant to the Montana Workers' Compensation Act. Mr. Hoehne requested a hearing before the Workers' Compensation Court which was held on October 18, 1978. On August 28, 1979, the court issued its findings of fact and conclusions of law in the matter and entered judgment in claimant's favor.

The findings of fact reveal: that the claimant's injury "was related to his activity on the job and that it arose out of and in the course of his employment"; and that although claimant could not relate his condition to any specific incident or happening on the job, it "developed gradually" and "got steadily worse."

The sole issue on appeal is whether the claimant suffered an injury as defined in section 39-71-119(1), MCA, which provides:

> "'Injury' or 'injured' means: (1) a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom and excluding disease not traceable to injury, except as provided in subsection (2) of this section;"

The appellant does not attack the Workers' Compensation Court's findings of fact, instead it is contended that the findings do not support the legal conclusion of a compensable injury. The heart of this contention is that a condition which arises and gradually becomes worse over a period of time, attributable to no specific incident, is not a "tangible happening of a traumatic nature from an unexpected cause or unusual strain." Respondent, on the other hand, contends that a series of "tangible happenings of a traumatic nature" and "unusual strain" related to the work activities of a lumber stacker over a two and one-half month period resulted in an injury within the definition of section 39-71-119(1), MCA. Thus, the sole difference between the parties on appeal is that one believes a gradual development of job-related injury which is not attributable

- 3 -

to one specific incident is an "injury" and the other believes it is not.

The issue of whether an injury fits within the definitional requirements of the Workers' Compensation Act has been presented to this Court in numerous cases.

In James v. V.K.V. Lumber Company (1965), 145 Mont. 466, 401 P.2d 282, a lumber stacker suffered a back injury when he bent over to pick up a 10 to 15 pound cement block. This act was within the claimant's normal work activity. The case was decided on the basis of section 92-418, R.C.M. 1947, which provided:

> "Injury or injured defined. 'Injury' or 'injured' means a tangible happening of a traumatic nature from an unexpected cause, resulting in either external or internal physical harm, and such physical condition as a result therefrom and excluding disease not traceable to injury." (Emphasis added.)

In a 3-2 decision, we found no injury within the previous definition, since the cause of the injury was not unexpected. "Lifting the fifteen pound block was expected and done routinely . . ." 145 Mont. at 469, 401 P.2d at 283.

A case similar to James was presented in Jones v. Bair's Cafes (1968), 152 Mont. 13, 445 P.2d 923. An employee, hired as a dishwasher, suffered a back injury from picking up a heavy tray of dishes. However, the 1967 legislature had amended section 92-418, R.C.M. 1947, to include "unexpected cause, or unusual strain." This language has not been amended since 1968 and has now been codified in section 39-71-119(1), MCA. In Jones we found an "injury" within the statutory definition and stated:

> "Now, in 1967, the legislature included the words 'or unusual strain.' What is the meaning? How do we measure 'unusual strain.' It seems clear that the legislature intended to change and modify the James decision. By adding the separate distinct phrase, 'or unusual strain,' the legislature intended to cover just such a situation as we have here. There was no 'unexpected cause' but there was an 'unusual strain;' thus the measure would seem to be the result of a tangible happening of a traumatic nature which results in physical harm, be it a rupture, a strain or a sprain. We can only rely on credible medical evidence to determine it.

- 4 -

Here we have such medical evidence." 152 Mont. at 19, 445 P.2d at 926.

We here express our agreement with the decision in Jones. The legislative amendment was intended to change the majority's decision in James and to allow claimants relief when an injury is the result of an "unusual strain" occurring on the job.

With regard to the requirement of a "tangible happening of a traumatic nature," this Court has stated:

> "Not only must claimant show an unusual strain, but that the strain must result from a tangible happening of a traumatic nature . . . A tangible happening must be a perceptible happening, Webster's Third New International Dictionary. Some action or incident, or chain of actions or incidents, must be shown which may be perceived as a contributing cause of the resulting injury . . ." Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 380-381, 546 P.2d 1055, 1058. (Emphasis added.)

In our present case the tangible happening was not a single isolated incident, as was the situation in Jones, but rather a chain of actions or incidents, i.e. the stacking of lumber on a daily basis. Under the preceding definition either situation is a "tangible happening."

No attack has been made on the causal connection and the record clearly establishes that respondent's injury resulted from his work activities as an employee of Granite Lumber. As a result numerous cases which find no "injury" because of a failure of proof on the element of causal connection simply do not apply to the present appeal. These cases generally arise in cases involving heart conditions or mental illness. See Moen v. Decker Coal Co. (1979), ____Mont.____, 604 P.2d 765, 36 St.Rep. 2220 (myocardial infarction); Dumont v. Wickens Bros. Const. Co. (1979), ____Mont.____, 598 P.2d 1099, 36 St.Rep. 1471 (heart attack); Erhart v. Great Western Sugar Company, supra; (mental breakdown); Hurlbut v. Vollstedt Kerr Company (1975), 167 Mont. 303, 538 P.2d 344 (myocardial infarction); McAndrews v. Schwartz (1974), 164 Mont. 402, 523 P.2d 1379 (arteriosclerosis).

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:

In determining what is an "injury" (section 39-71-119(1), MCA), under the Workers' Compensation Act, this Court has demonstrated a quixotic ability to mount its horse and ride off in all directions.

In McAndrews v. Schwartz (1974), 164 Mont. 402, 523 P.2d 1379, compensation was denied to a claimant with arterio-sclerosis obliterans in a femoral artery principally because the Act excluded "disease not traceable to injury."

In Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 546 P.2d 1055, compensation was denied to a claimant who suffered a mental breakdown because there was no tangible happening of a traumatic nature from an unexpected cause or unusual strain.

In Ness v. Diamond Asphalt Company (1964), 143 Mont. 560, 393 P.2d 43, compensation was denied where an employee suffered a myocardial infarction while at work, but not because of his work.

In Greger v. United Prestress, Inc. (1979), ___ Mont. ____, 590 P.2d 1121, we held that contact dermatitis caused by repeated exposure to chromate ions in materials used by the claimant in his work was an occupational disease, compensable as such, and not as an industrial accident.

In Hurlbut v. Vollstedt Kerr Company (1975), 167 Mont. 303, 538 P.2d 344, we held that unusually cold weather did not constitute an "unusual strain" to make a myocardial infarction suffered thereby in an otherwise diseased heart compensable.

In Dumont v. Wickens Bros. Const. Co. (1979), ____ Mont. ____, 598 P.2d 1099, 36 St.Rep. 1471, we held that a claimant found dead in bed had not established a heart

condition "traceable to injury" from long hours, stresses and strains on the job, and we denied compensation.

In the recent case of Moen v. Decker Coal Co. (1979), ___ Mont. ____, 604 P.2d 765, 36 St.Rep. 2220, the majority denied compensation in a myocardial infarction case on the basis of no tangible happening of a traumatic event. I dissented because the evidence showed that the infarction occurred on the job, after which the claimant was subjected to further unusual strain of an unexpected nature which aggravated his condition and led to his death.

In the instant case, we have a claimant who was doing the job he was hired to do, stacking lumber. While he was doing the ordinary chores of his job, his tendons swelled, pinching the nerves in his hands. Where is the traumatic happening of a tangible event? Where is the unexpected cause or unusual strain, if his job is to stack lumber? These elements simply do not exist.

It is far more likely that claimant is entitled to compensation under the Occupational Disease Act of Montana. (Sections 39-72-101 et seq., MCA). The swelling of his tendons from the repeated exertions of stacking lumber is not unlike the development of contact dermatitis from repeated exposures to chromate, as in Greger, supra.

Here is the anomaly of these decisions: Section 39-71-119, MCA, defining a compensable "injury," provides that "injury" excludes disease not traceable to injury, but excepts three classes of diseases: cardiovascular, pulmonary, or respiratory. Under the decisions of this Court, it has constantly ruled myocardial infarctions are not compensable, though they are within the exception. Here we make something akin to tendonitis compensable, though it is outside the exception.

- 8 -

I would hold that the claimant is entitled to compensation under the Occupational Disease Act of Montana. His benefits would be the same, but he would not be entitled to benefits for partial disability. (Section 39-72-703, MCA.) Here that is not important, because no residual disability is claimed.

John C. Sheehy