No. 81-34

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

GEORGE D. McMAHON,

      Claimant and Appellant,

  -vs-

THE ANACONDA COMPANY, Employer,

    and

THE ANACONDA COMPANY,

      Defendant and Respondent.

APPEAL FROM:  Workers' Compensation Court,
              The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Charles M. Cruikshank, III argued, Great Falls,
        Montana

    For Respondent:

        Waite, Schuster & Larson; Richard Larson argued,
        Great Falls, Montana

Submitted: February 28, 1984

Decided: March 29, 1984

Filed: MAR 29 1984

*Ethel M. Harrison*
_____
             Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of Court.

George D. McMahon (claimant) appeals from orders of the Workers' Compensation Court denying benefits under the Occupational Disease Act and the Workers' Compensation Act. Claimant sought benefits under both Acts simultaneously in separate proceedings. The two cases have been consolidated for purposes of appeal. We remand for further proceedings.

Claimant worked at the Anaconda Company's copper refinery in Great Falls from 1956 through December 6, 1978 as an inspector. During this period, claimant was continuously exposed to moderate levels of sulphuric acid, organic arsenic, zinc, lead, copper, tellurium, asbestos, silver, dust and other compounds in the refinery environment.

Claimant complains of throat and lung problems secondary to the exposure to the environment at work, and resulting aggravation of psychological problems. Claimant was diagnosed as having "chronic obstructive lung disease," "laryngeal irritation," "leukoplakia of the vocal cords," "severe anxiety" and other psychological problems.

Examining physicians agree that claimant's physical ailments result more from claimant's one to two pack a day cigarette habit than from the exposure to fumes, etc. at his work. However, the Occupational Disease Panel concluded that the disability attributable to the physical ailments was "about 15 percent related to his occupation."

The level of disability due to Claimant's physical ailments is sketchy. With regard to the chronic obstructive pulmonary disease, panel members noted that 90% of persons with the same degree of physical impairment could nonetheless "elk hunt" and "jog" and that if claimant had been young, "he might have even got stuck in the army." Panel members also

state that claimant could return to work if he would quit smoking. Dr. French testified that claimant's laryngeal problems would not "disable you in the conventional sense of the word that you can't work, unless you are perhaps a singer or something."

There is no testimony that claimant's job was particularly strenuous so that the degree of physical impairment he suffered would prevent him from performing his job. There is evidence that claimant is totally disabled because of his psychological problems.

The following issues are dispositive of this appeal:

1. Whether claimant's ailments are "injuries" within the meaning of the Workers' Compensation Act.

2. Whether claimant is totally disabled as a result of his physical and/or psychological ailments.

3. Whether psychological disability stemming from work-related physical diseases is compensable under the Occupational Disease Act.

4. Whether claimant's psychological disorders were proximately caused or contributed to by his employment and resulting physical disorders.

Workers' Compensation Act

With regard to the Workers' Compensation Act, we find the following issue to be determinative: Are claimant's physical and psychological ailments, resulting from years of exposure to noxious fumes and particulates in his work environment, "injuries" as defined in section 39-71-119, MCA?

The Workers' Compensation Act only provides for liability of insurers when an employee "received an injury arising out of and in the course of his employment." Section 39-71-407, MCA (emphasis added). Injury is defined in section 39-71-119, MCA as "a tangible happening of a

3

traumatic nature from an unexpected cause . . . and such physical condition as a result therefrom excluding disease not traceable to injury . . .."

Despite the detailed definition, it remains a difficult task to satisfactorily describe and define injury to the exclusion of disease.  See LaPlant, Opp, Workers' Compensation and Occupational Disease, 43 Mont. L.Rev. 75, 92-100(1982).  Professor Larson identifies two crucial points of distinction:  "unexpectedness," and "time-definiteness." 1B A. Larson, The Law of Workmen's Compensation §41.31 at 7-357.  We find the second point to be the critical factor in this case.  The fact that claimant's ailments were so very gradual in onset excludes them from the definition of injury.

We hesitate to attempt to locate the line between long-term, gradual trauma or disease, and short-term, accidental trauma, exposure or strain.  In Hoehne v. Granite Lumber Co. (Mont. 1980), 615 P.2d 863, 37 St.Rep. 1307, claimant was held to have an "injury", though the onset of his carpal tunnel syndrome took place over a period of two months.  However, we feel it is safe to conclude that where laryngeal and pulmonary disorders and resulting psychological impairment are occasioned by exposure to a hostile environment for a period of years, the disorders fall within the meaning of the legislatively defined term "disease."

We uphold the Compensation Court's conclusion that claimant has suffered no compensable injury.

Occupational Disease Act

The first issue under the Occupational Disease Act is whether claimant is totally disabled, temporarily or permanently, so as to entitle him to benefits under the Act.

4

Section 39-72-703, MCA provides that no compensation is payable to an employee who is "partially disabled from an occupational disease."

After reviewing all of the evidence in this matter, the Division of Workers' Compensation of the Department of Labor and Industry found that substantial, credible and overwhelming evidence establishes that claimant is not permanently, totally disabled as a result of his physical impairment. On appeal this conclusion was found by the special master to be supported by reliable probative and substantial evidence on the record. We agree with the special master and affirm the Compensation Court's adoption of this portion of the master's report. Claimant may be impaired and disabled but he is certainly not totally incapacitated from performing work in the normal labor market because of his physical ailments. Section 39-72-102(3), MCA.

The only remaining route by which claimant would be entitled to benefits is where he is totally disabled by reason of his psychological impairment, and such disorder was caused by claimant's employment and/or the resulting physical diseases.

A threshold question to such a route to disability benefits is whether psychological disability, stemming from work-related physical diseases, is compensable under the Occupation Disease Act. This Court has held that psychological disability steming from a work-related injury is compensable under the Workers' Compensation Act. Schumacher v. Empire Steel Manufacturing Co. (1977), 175 Mont. 411, 574 P.2d 987. Whether such disorders are compensable under the Occupational Disease Act is a question of first impression. This question was addressed in a Colorado case where the claimant developed a disabling

5

emotional reaction to a mild case of silicosis. The Colorado court focused on the definition of "disablement" as "physically incapacitated by reason of an occupational disease" and concluded that the claimant did not show that he was "'physically' incapacitated." Romero v. Standard Metals Corp. (1971), 29 Colo. App. 455, 485 P.2d 927, 928.

Professor Larson criticized this sort of "nineteenth-century compartmentalizing of the 'physical' and the 'neurotic,' as if the nerves and brain were less a part of the body than the bones and tissues." 1B A. Larson, The Law of Workmen's Compensation §42.22, at 7-615.

Although Montana has the same definition of "disablement" (section 39-72-102(3), MCA), we agree with Larson, and refuse to follow the Colorado court. An "occupational disease" is defined as "all diseases arising out of or contracted from and in the course of employment." Section 39-72-102(11), MCA (emphasis added). We specifically hold that disablement under the Occupational Disease Act includes inability to work in the normal labor market by reason of a psychological disorder stemming from an occupational disease.

Claimant argues that he was disabled because he feared cancer would result if he continued to work at the refinery. Whether this fear is rational or not is not determinative. The question is whether or not claimant is in fact totally disabled because of his psychological impairment. Under the Occupational Disease Act, this question is to be answered by a report from the medical panel. Sections 39-72-602, 609, 610, MCA. Without such a report, the Division could not and did not determine whether claimant is totally disabled due to his psychological disorders.

6

Instead, the Division found that it was unnecessary to submit the psychological disorders to the medical panel. The Division reasoned that claimant's psychological disability was not proximately caused by his job. On appeal, the Workers' Compensation Court agreed, concluding that the deposition of psychologist Jones refuted any claim of causation.

We disagree. We find that the Jones deposition does not in any way tend to disprove that claimant's psychological disability was caused by his employment and resulting physical ailments.

Section 39-72-706, MCA provides that if disability from any cause not itself compensable "is aggravated, prolonged, accelerated, or in any way contributed to by an occupational disease," then the disability is compensable in the same proportion as the cause attributable to the occupational disease bears to all the causes of such disability.

There is evidence in this case that claimant's physical ailments were occupational diseases and were 15% caused by his work environment. The medical panel so concluded, and that conclusion is presumptively correct. Thus, if claimant can show that his lung and laryngeal disorders aggravated or contributed to claimant's deteriorating psychological condition, his disability, if total, is compensable at least in part.

However, the Division made procedural rulings which kept claimant from entering into the record information relevant to this issue. The Anaconda Company's physician, Dr. Engstrom, wrote a letter dated May 23, 1980 in which he stated:

> "Because the exacerbation of his pre-existing emotional problems was a result of the onset of his physical problems, I consider it appropriate to

consider that 15% of his present emotional problems are related to his occupation."

Subsequent to hearing, claimant's attorney requested permission to depose Dr. Engstrom because he had believed that the Anaconda Company would place the May 23, 1980 letter into evidence. Claimant indicated that the letter itself was acceptable in lieu of the deposition. The Division treated the letter as an offer of proof and ruled:

1. No post-hearing deposition would be allowed because such deposition would be without value as claimant could not establish a compensable psychological disorder in any event.

2. The letter is hearsay and cannot be received in evidence in an administrative hearing under the Occupational Disease Act. Hert v. Newberry (1978), 178 Mont. 355, 584 P.2d 656.

Claimant's offer of proof clearly demonstrates that Dr. Engstrom's testimony could establish the vital causal connection between claimant's employment and his psychological disability. There is no evidence of record which would rebut such a prima facie showing. The Division's failure to grant claimant's request for a post-hearing deposition of Dr. Engstrom was a failure to attempt to correctly resolve this issue of causation. We therefore hold that the denial of claimant's deposition request was an abuse of discretion.

The case is remanded to the Division of Workers' Compensation with directions to (1) direct that claimant be examined by the medical panel to determine whether or not claimant is totally disabled due to his physical and psychological disorders and, (2) consider the deposition or testimony of Dr. Engstrom with regard to the issue of whether or not claimant's psychological condition was caused,

8

aggravated, or "in any way contributed to" by his work environment and resulting physical disorders.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9

Mr. Justice L.C. Gulbrandson dissenting.

I respectfully dissent.

I would affirm the orders of the Workers' Compensation Court.

_____
Justice