No. 85-353

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

EDWIN R. BREMER,

       Claimant and Respondent,

    -vs-

DONALD BUERKLE,  Employer,

    and

STATE COMPENSATION INSURANCE FUND,

       Defendant and Insurer,
    and

INTERMOUNTAIN INSURANCE COMPANY,

       Defendant and Appellant.

APPEAL FROM: The Workers' Compensation Court of the State of
Montana, The Honorable Timothy Reardon, Judge.

COUNSEL OF RECORD:

    For Appellant:

        Moulton, Bellingham, Longo & Mather; Brad H. Anderson,
        Billings, Montana

    For Respondent:

        Utick & Grosfield; Andrew J. Utick, Helena, Montana
        Crowley Law Firm; Terry G. Spear, Billings, Montana

Submitted: August 7, 1986

Decided: October 30, 1986

Filed: 10-30-86

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Edwin Bremer suffered from allergic contact dermatitis which caused him to be disabled forcing him to quit his job as a body shop repairman. The Workers' Compensation Court held that Mr. Bremer's allergy was both an injury and a disease and therefore Mr. Bremer was entitled to elect his remedy under either the Workers' Compensation Act or the Occupational Disease Act. We affirm.

The only issue in this case is, did Edwin Bremer's allergy constitute an injury within the meaning of the Workers' Compensation Act, as well as an occupational disease within the meaning of the Occupational Disease Act, so that Mr. Bremer can elect his remedy between the two acts?

Edwin Bremer (claimant) had worked at the Baker Body Shop in Baker, Montana for approximately nine years as a "body man." The claimant's employment duties required him to remove dents and otherwise repair the bodies of damaged vehicles. This work exposed the claimant on a daily basis to the fumes of the chemicals in paint primer, paint, enamel reducer, lacquer thinner, body filler, body putty and rubbing compound and exposed the claimant to direct body contact with these same chemicals. On or about February 24, 1983, the claimant developed a rash and itching on the top side of his right shoulder. On March 10, 1983, the claimant first obtained medical treatment for his rash. From the time the claimant first contracted the allergy until he quit work on March 27, 1984, the claimant's rash spread over his back to his right arm and his hands and fingers.

In February of 1983, claimant's employer was enrolled under Compensation Plan No. 2 of the Montana Workers'

2

Compensation Act, the insurer being Intermountain Insurance Company (Intermountain). Intermountain remained as the employer's insurer until August 11, 1983, after which time the employer was enrolled with the State Compensation Fund (State Fund). The State Fund accepted liability and paid benefits to claimant under the Occupational Disease Act, but has refused to accept liability under the Workers' Compensation Act. Intermountain denies any liability under either the Workers' Compensation Act or the Occupational Disease Act. Claimant desires to receive benefits for his allergy as an injury under the Workers' Compensation Act. If claimant's allergy is considered to be an injury which occurred in February 1983, then Intermountain Insurance Company is liable under §§ 39-71-101 to -2909, MCA, as it was the insurer at risk at that time. If claimant's allergy is considered an occupational disease, then the State Fund is liable to claimant under §§ 39-72-101 to -714, MCA, as it insured claimant's employer in March 1984 when claimant became disabled. None of the parties question the fact that Mr. Bremer's allergy is a disease covered under the Occupational Disease Act. If claimant's allergy is considered both an "injury" as defined in the Workers' Compensation Act, and a "disease" as defined in the Occupational Disease Act, then claimant is entitled to make an election as to the Act under which he will claim benefits. Ridenour v. Equity Supply Co. (Mont. 1983), 665 P.2d 783, 40 St.Rep. 1012.

The medical evidence was presented in two depositions of Dr. William G. Ballinger, which showed that claimant was exposed to some chemical at work to which his immune system reacted by developing antibodies. The Workers' Compensation Court concluded that the exposure to the chemical in question

3

occurred on or about February 17, 1983, and that on or about February 24, 1983, for reasons unknown to medical science, the claimant became allergic to the chemical (or chemicals) in question and developed allergic contact dermatitis. The claimant's rash and itching were continuous, with varying intensity and severity, from February 24, 1983 to the trial date.

I

Did Edwin Bremer's allergy constitute an injury within the meaning of the Workers' Compensation Act, as well as an occupational disease within the meaning of the Occupational Disease Act, so that Mr. Bremer can elect his remedy between the two acts?

This Court has stated the general rule on several occasions that we will not substitute our judgment for that of the Workers' Compensation Court where there is substantial evidence to support its findings of fact. See Wise v. Perkins (Mont. 1983), 656 P.2d 816, 40 St.Rep. 1, and cases cited.

The Workers' Compensation Act defines injury in § 39-71-119(1), MCA, which provides:

> Injury or injured defined. "Injury" or "injured" means:
> (1) a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom and excluding disease not traceable to injury, except as provided in subsection (2) of this section;

Likewise § 39-72-102(11), MCA, of the Occupational Disease Act defines occupational disease:

> "Occupational disease" means all diseases arising out of or contracted from and in the course of employment.

4

In McMahon v. The Anaconda Co. (Mont. 1984), 678 P.2d 661, 41 St.Rep. 480, we held that claimant's physical and psychological ailments, which resulted from years of exposure to noxious fumes and particulates in his work environment, were not "injuries" for purposes of the Workers' Compensation Act. Regarding the difference between what constitutes an injury and a disease, we stated:

> Despite the detailed definition, it remains a difficult task to satisfactorily describe and define injury to the exclusion of disease. See LaPlant, Opp, Workers' Compensation and Occupational Disease, 43 Mont.L.Rev. 75, 92-100 (1982). Professor Larson identifies two crucial points of distinction: "unexpectedness," and "time-definiteness." 1B A. Larson, The Law of Workmen's Compensation § 41.31 at 7-357. We find the second point to be the critical factor in this case. The fact that claimant's ailments were so very gradual in onset excludes them from the definition of injury.
>
> [2] We hesitate to attempt to locate the line between long-term, gradual trauma or disease, and short-term, accidental trauma, exposure or strain. In Hoehne v. Granite Lumber Co. (Mont. 1980), 615 P.2d 863, 37 St.Rep. 1307, claimant was held to have an "injury", though the onset of his carpal tunnel syndrome took place over a period of two months. However, we feel it is safe to conclude that where laryngeal and pulmonary disorders and resulting psychological impairment are occasioned by exposure to a hostile environment for a period of years, the disorders fall within the meaning of the legislatively defined term "disease."

McMahon, 678 P.2d at 663.

Here the Workers' Compensation judge analyzed the "unexpectedness" and "time-definiteness" factors and concluded that Mr. Bremer's allergy was unexpected and time-definite. The findings of fact of the Workers' Compensation Court accurately summarized the medical testimony of Dr. Ballinger:

> 9. On or about February 17, 1983, the claimant was exposed to some chemical at work to which his immune system reacted from on or about February 17, 1983, to on or about February 24, 1983, by developing antibodies to the chemical in question. (deposition cites omitted.)

10. On or about February 24, 1983, the claimant, for reasons unknown to medical science, had developed antibodies to the chemical to which claimant was exposed to at work on or about February 17, 1983; this development (i.e., exposure followed by immune system developing antibodies) resulted in the claimant having allergic contact dermatitis and being allergic to the chemical (or chemicals) in question. (cites omitted.)

11. On or about February 24, 1983, the claimant was again exposed to the chemical that had on or about February 17, 1983, triggered the immunological response in the claimant that resulted in the claimant developing allergic contact dermatitis; this second exposure, caused the claimant on or about February 24, 1983, to develop a rash on the top of his right shoulder. Id.

12. The exposure to the chemical in question that caused the claimant to develop allergic contact dermatitis occurred on or about February 17, 1983; the claimant did not develop allergic contact dermatitis because of his repeated and cumulative exposure to the chemical in question for the approximately nine years prior to February 17, 1983. (cites omitted.)

13. The claimant's rash and itching from on or about February 24, 1983, to the date of trial is the result of his allergic contact dermatitis; the rash and itching has been continuous, with varying intensity and severity, from February 24, 1983, to the date of trial. (cites omitted.)

14. The claimant's rash and itching has persisted from on or about February 24, 1983, to the date of trial because of his repeated exposure at work to the chemical in question from on or about February 24, 1983, through March 27, 1984. (cites omitted.)

15. The claimant's development of allergic contact dermatitis was unexpected; i.e., by definition, an allergic reaction to a chemical is unusual and few persons become allergic to chemicals with which they have frequently worked for many years. (cites omitted.)

The testimony of Dr. Ballinger showed Mr. Bremer was exposed to chemicals on or about February 17, 1983, which resulted in a rash which first appeared about seven days later. Thus, the "time-definiteness" factor enunciated by Professor Larson was met.

The "unexpectedness" factor identified by Professor Larson was also met. In that regard, Dr. Ballinger testified:

> Q. Now, if a person is exposed to chemical for a number of years, I believe you testified that a worker can be exposed to the same chemicals day after day for 25, 30 years' period. But during that period, not be allergic to them.
>
> A. That is true.
>
> Q. And then for some reason, there will be one exposure which causes an allergic reaction and the allergic symptoms, the rash, this type of dermatitis will manifest itself.
>
> A. That one exposure somehow stimulates the immune system to set in a cascade of events that leads to what we know as allergic sensitivity.
>
> Q. And exposures to the same chemicals prior to that reaction did nothing.
>
> A. That's correct.
>
> . . .
>
> Q. . . . So then to follow that out, medical science would not know what effect, if any, those previous exposures might have had to this same chemical?
>
> A. Well, one would have to say that previous exposures had no effect.
>
> Q. So it's not a situation where it's a gradual buildup--
>
> A. No. No.
>
> Q. --of sensitivity to a particular chemical.
>
> A. It's an all or nothing type of rash, in which you either don't react at all or you do react to varying degrees of sensitivity.
>
> . . .
>
> Q. You've probably answered this question many times already, but I'm going to use a little different words. Mr. Bremer's development of this what you feel is allergic reaction would not have been expected, would it? It would have been an unexpected happening.
>
> A. Yes.

7

The evidence established that notwithstanding Mr. Bremer's exposure to chemicals for nine years, for reasons unknown to medical science, a single exposure unexpectedly stimulated his immune system and led to the allergy. This is in contrast with Greger v. United Prestress, Inc. (1979), 180 Mont. 348, 590 P.2d 1121. In Greger the claimant had an existing allergy which was triggered by a chemical to which he was exposed in the work place. Claimant Greger's allergic response was expected because his condition had already existed. In contrast, claimant Bremer's reaction was not expected as he had been exposed to the same chemical for many years without any response by his system. We distinguish Greger from the present case because of the "unexpectedness" of the allergy in the present case as compared to the "expectedness" of the allergic reaction of claimant Greger. The evidence here clearly established that Mr. Bremer had met the "unexpectedness" test enunciated by Professor Larson.

We affirm the conclusion of the Workers' Compensation Court in regard to the "unexpectedness" and "time-definiteness" factors:

> The claimant's development of allergic contact dermatitis was unexpected, i.e., it is not recognized as an inherent hazard of continued exposure to the chemicals with which the claimant routinely worked; his development of allergic contact dermatitis was not gradual, i.e., a single exposure to the chemical in question triggered the immunological response that created the antibodies, that are his allergy, no later than seven days after the single, triggering exposure.

Dr. Ballinger's testimony demonstrates that a tangible happening of a traumatic nature resulted in Mr. Bremer's contact dermatitis, thereby meeting the tests under § 39-71-119, MCA. We hold that Mr. Bremer's allergy constituted an injury within the meaning of the Workers'

8

Compensation Act, as well as an occupational disease within the meaning of the Occupational Disease Act, so that he could elect his remedy between the Acts. The judgment of the Workers' Compensation Court is affirmed.

Justice

We Concur:

Chief Justice

Justices