No. 90-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

LEO BODILY,

Petitioner and Appellant,

-vs-

JOHN JUMP TRUCKING, INC., Employer, and
STATE COMPENSATION MUTUAL INSURANCE FUND,

Defendant and Respondent.

APPEAL FROM:    The Workers' Compensation Court,
The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Darrell S. Worm; Ogle & Worm, Kalispell, Montana

For Respondent:

Richard E. Bach, State Comp. Mutual Ins. Fund,
Helena, Montana

FILED

OCT 29 1991

*Ed Smith*

Filed CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  May 16, 1991

Decided:  October 29, 1991

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Claimant Leo Bodily filed a petition in the Workers' Compensation Court to recover disability and medical benefits as a result of injuries he alleged he sustained during the course of his employment with John Jump Trucking, Inc. Following trial before the court's hearing examiner, the court concluded as a matter of law that claimant failed to give adequate notice of his injury to his employer, as required by § 39-71-603, MCA (1985), and that claimant's disability did not result from an injury as defined in § 39-71-119(1), MCA (1985). From the judgment entered pursuant to those conclusions, claimant appeals. We reverse.

The issues which control our decision are the following:

1. Did claimant provide his employer with timely notice of his injury pursuant to § 39-71-603, MCA (1985)?

2. Did claimant sustain an injury within the meaning of § 39-71-119(1), MCA (1985), during the course of his employment with John Jump Trucking, Inc.?

## FACTUAL BACKGROUND

In 1979, prior to his employment with John Jump Trucking (hereinafter referred to as "Jump"), claimant sustained severe injuries while operating a logging truck when a log rolled off the truck and landed on him. Robert Schimpff, M.D., a board certified neurologist, who treated him at the hospital for that injury, diagnosed hemorrhaging into claimant's cervical spine, a collapsed right lung, fracture of several ribs, fracture of his scapula,

2

injury to several intervertebral discs in his lower back, internal injuries, and injuries to his right wrist and foot.

However, claimant recovered from those injuries sufficiently to go to work for Jump as a logging truck driver in March 1981. He worked for Jump continuously until taking a leave of absence for medical reasons on July 8, 1986.

Claimant testified that the only residual impairment that he was aware of from his 1979 accident was some loss of strength in his right arm. However, in December 1985, he began developing loss of strength in his left arm. Over the course of the next six months, his left-sided symptoms progressed from weakness to muscle spasms, cramps, and numbness in his lower left extremity, as well as his upper left extremity. Claimant testified that by July 8, 1986, he was experiencing terrible neck pain, loss of strength on his left side, and was so impaired by pain medication that he felt it was unsafe for him to continue operating a logging truck on the state's highways. By July 8, 1986, he determined that he could not continue with his employment, and asked his employer for permission to take leave from his job so that he could seek medical treatment for his condition.

Claimant testified that prior to leaving work on July 8, 1986, he met with his employer, John Jump, and explained that he felt it was unsafe for him to continue working, due to his physical condition. He testified that he also recalls explaining to Jump that although he felt reasonably comfortable upon arriving at work,

3

within a couple of hours after getting into his truck and being exposed to the bouncing around that occurred from operating that truck on logging roads, he could no longer stand the pain. When the pain developed he was forced to take Tylenol III with codeine.

After taking leave from his employment, claimant went to the Veteran's Administration Center at Fort Harrison to be examined in an effort to determine the cause of his complaints. However, the VA Center had no neurology department, and therefore, put him on a waiting list for an examination at the Veteran's Administration Center in Salt Lake City, Utah. He was accepted at the VA Center in Salt Lake City on about July 21, 1986, and was discharged on August 5, 1986. However, the physicians at the VA Center were unable to explain the physiological basis for claimant's complaints, and speculated that they may result from nerve root irritation or multiple sclerosis. Claimant's multiple sclerosis had been diagnosed in 1969 and periodically through the years he had experienced neurological problems which he attributed to that condition.

Claimant testified that shortly after he returned from Salt Lake City he arranged to meet his employer at a restaurant to explain what he had learned about his condition, and to discuss a date for returning to work. He testified that during that meeting he explained to Jump that he did not know the cause of his symptoms, but had been advised to rest, exercise, and try to rebuild his strength. Claimant testified that he explained to his

4

employer at that time that in his opinion if he returned to his job his condition would worsen.

John Jump testified that he recalled claimant taking time off from work in July 1986, and assumed that he had been given notice by claimant of the fact that he would not be coming to work and the reasons for his absence. However, he testified that he had no specific recollection of the explanation given to him by claimant for claimant's leave of absence. He also recalled having a conversation with claimant in a cafe after his return from Salt Lake City, but could not recall what was said during that conversation. He had no recollection of having been advised by claimant that he was having physical problems related to the performance of his job. However, he was unable to deny that claimant discussed those problems based on any specific recollection of his conversations with the claimant.

During his absence from employment, claimant testified that he was unable to rebuild the strength in either arm, but that the pain he had been experiencing while working subsided and that he eventually ran out of money. He called his employer and asked to return to work with a reduced work load. He did return to work on October 22, 1986.

For the first month after returning to work, claimant was given easier jobs which did not involve operating a logging truck on logging roads. His routes were limited to highway hauls, which did not involve as much jarring and jostling of his spine.

5

However, after returning to his normal duties, his physical condition became progressively worse and the pain which he had experienced prior to July 8, 1986, returned.

Claimant testified that during spring break-up in 1987 he again explained to his employer that a few hours after getting into and operating his truck, his pain would become intolerable. He testified that at that point he and Jump agreed that he could begin seeing a chiropractor for his neck pain. However, in spite of his efforts to obtain further treatment, claimant testified that by June 30, 1987, his left leg started to go numb while at work, and by the time he returned home his body had gone numb from the waist down. He remained in that condition until he terminated his employment with Jump in August 1987.

Claimant testified that when his symptoms would worsen they would do so quickly. For example, when he lost strength in his left arm, that development occurred overnight. When he lost sensation in his left leg and lower body, that development occurred in the course of 24 hours. When pain would develop during the course of his employment, it would develop within hours after getting into and operating his logging truck.

On August 4, 1987, claimant returned to Dr. Schimpff who felt that, because of the earlier hemorrhaging in the area of claimant's spinal cord, further neurological evaluation was warranted. Eventually, diagnostic studies illustrated arthritic development and stenosis in the area of claimant's cervical spine which was

6

compressing or displacing his spinal cord. It was Dr. Schimpff's opinion that the condition for which he examined claimant in August 1987 was the same condition from which claimant was suffering when he left work and sought treatment on July 8, 1986. Dr. Schimpff testified that in his opinion the original injury that had occurred in 1979 predisposed claimant to degenerative changes in his cervical spine which were accelerated by the repeated trauma to the spine associated with his activities driving a logging truck. It was also Dr. Schimpff's opinion that without the traumas caused during the course of claimant's occupation, the cervical stenosis which was responsible for his neurological symptoms may never have occurred, or would probably have occurred years later than it did develop.

Dr. Schimpff described the impact caused by claimant's occupation as repetitive trauma which accelerated the degenerative changes in claimant's spine.

He described the jolting and jarring that claimant experienced as a logging truck driver as small injuries which cumulatively became a substantial injury.

Dr. Schimpff also testified that, while the further degeneration of claimant's spine occurred over the entire period that he worked for his employer, the onset of disabling symptoms from that physical condition could have occurred relatively suddenly.

7

As a result of his diagnosis, Dr. Schimpff referred claimant to Albert Joern, M.D., a neurosurgeon. Dr. Joern first examined claimant on September 14, 1987, and on September 18 of the same year, admitted claimant to the hospital where he performed a cervical discectomy and interbody fusion at three levels of claimant's cervical spine.

Based upon what he found when he performed that surgery, and based upon his review of claimant's diagnostic studies, it was also Dr. Joern's opinion that the condition for which he operated on claimant was related to his employment as a logging truck driver. Dr. Joern explained that during his operation he observed severe degeneration at three levels of the cervical spine, but that films which were taken of claimant's neck in 1979 showed no such disc damage. From that he was able to conclude that between 1981 and 1987 these discs herniated.

Dr. Joern explained that, in his opinion, claimant had an injury to his neck in 1979 which did not produce a herniation, but which produced weakness or some internal disruption; and that due to claimant's subsequent employment which involved bouncing around in a logging truck day after day, his neck was subjected to repeated stresses. He testified that through a cumulative traumatic process over a period of three to four years those discs were caused to bulge, scar down, calcify, and stabilize. In his opinion, the primary occupational factor that ultimately made

surgery necessary for claimant was the bouncing associated with operating a logging truck over logging roads.

It was Dr. Joern's opinion, however, that the symptoms associated with claimant's worsened neurological condition appeared to have developed from late 1985 through mid-1986 when claimant presented at the VA Hospital with neurological impairment.

By the time Dr. Joern saw claimant in 1987, he considered his condition a medical emergency.

On November 17, 1987, claimant filed his claim for compensation, alleging that he had been injured during the course of his employment and setting forth July 6, 1986, as the date of his injury.

The Workers' Compensation Court's findings of fact were less specific, but not significantly different from those facts previously set forth in this opinion. However, that court concluded that as a matter of law the information given by claimant to his employer was not sufficient to satisfy the notice requirement of § 39-71-603, MCA (1985). The Workers' Compensation Court concluded that there was not a statement by claimant to his employer of an injury related to his job which was sufficient to notify a reasonably prudent employer that there may be a potential compensation claim.

The Workers' Compensation Court further concluded that claimant did not suffer an injury as defined in § 39-71-119(1), MCA, because the period of time over which the injury occurred

9

lacked sufficient time definiteness to qualify as an injury according to the previous decisions of this Court.

I

Did claimant provide his employer with timely notice of his injury pursuant to § 39-71-603, MCA (1985)?

The notice requirement in effect at the time of claimant's injury was § 39-71-603, MCA (1985). It provided that:

> No claim to recover benefits under the Workers' Compensation Act, for injuries not resulting in death, may be considered compensable unless, within 60 days after the occurrence of the accident which is claimed to have caused the injury, notice of the time and place where the accident occurred and the nature of the injury is given to the employer or the employer's insurer by the injured employee or someone on the employee's behalf. Actual knowledge of the accident and injury on the part of the employer or the employer's managing agent or superintendent in charge of the work upon which the injured employee was engaged at the time of the injury is equivalent to notice.

To conclude claimant's notice to his employer was inadequate, the Workers' Compensation Court relied on our decision in *Reil v. Billings Processors, Inc.* (1987), 229 Mont. 305, 746 P.2d 617. The scope of our review is to determine whether the decision in that case was correctly applied to the fact situation in this case. Therefore, the standard for review is to determine whether the trial court's interpretation of the law, as applied to the facts in this case, is correct. *Wassberg v. Anaconda Copper Co.* (1985), 215 Mont. 309, 697 P.2d 909. In *Reil*, the claimant suffered from congenital deformities in both arms. Following several operations and various jobs, claimant

10

was employed as a computer operator where he lifted boxes, unloaded computer tape reels, and performed light janitorial work. The work he did, as well as recreational activities that he performed, caused pain in his arms.

*Reil* occasionally complained to his employers about the pain that he experienced in his arms. However, we concluded that those complaints were insufficient to constitute notice under § 39-71-603, MCA, for the following reasons:

> However, Reil did not relate to his employers that this pain was as a result of his work related duties. Reil's employers assumed that his problems were merely the consequences of the congenital deformities. Reil did not ask to be reassigned to another position nor did he request that his employers modify his duties to reduce the necessity for use of his arms and hands.

*Reil*, 746 P.2d at 618.

We held that:

> The fact that Billings Processors knew Reil was experiencing pain, either taken alone or cumulatively with the other facts of this case, does not constitute actual knowledge. Accordingly, the lower court erred in finding that Billings Processors had actual knowledge of Reil's alleged injury. We find that Billings Processors had no actual knowledge of either an injury or a job-induced aggravation of a preexisting condition in this case.

*Reil*, 746 P.2d at 623.

The facts in this case are significantly different. According to claimant's testimony, he did relate his pain and deteriorating physical condition to his employment. He explained that within two hours after getting into and operating his truck, the pain he

experienced became extreme. He advised his employer, after being off work for a period of time, that his symptoms had improved, but that he was afraid to return to work too soon for fear of re-aggravating his condition. When claimant did return to work, he requested that he be allowed to avoid rough roads for awhile so as not to aggravate his condition; and after returning to normal duties, he again informed his employer that within hours after entering and operating his truck his physical condition was intolerable and it was necessary to consume significant pain medication. Unlike *Reil*, claimant did associate his symptoms with his employment. He did take time off to recover from his injuries, and he did ask to modify his duties to avoid aggravation of his condition.

In *Lee v. Lee* (1988), 234 Mont. 197, 199, 761 P.2d 835, 837, we interpreted *Reil* to mean that, "[t]he employer must have notice that the claimant considers his injury work-related." We relied on the following discussion from a leading treatise on workers' compensation law:

> It is not enough, however, that the employer, through his representatives, be aware that claimant "feels sick", or has a headache, or fell down, or walks with a limp, or has a pain in his back, or shoulder, or is in the hospital, or has a blister, or swollen thumb, or has suffered a heart attack. There must in addition be some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim.

3 Larson, Workmans' Compensation Law, § 78.31(a)(2) pp. 15-126 to 15-136 (1988).

*Lee*, 761 P.2d at 837.

In this case, unlike the claimant in *Reil*, claimant provided his employer with all the information he had regarding the nature of his injury and its relationship to his employment. Claimant knew that he had neck, arm, and leg problems of unknown etiology which were made worse after performing his job duties for a short period of time. That is all he knew. According to claimant's testimony, that is what he reported to his employer. By providing his employer with all the information he had regarding the nature of his injury, the period of time over which it occurred, and the nature of activity that contributed to or caused his condition, claimant did all that can be reasonably expected to comply with the notice requirement in § 39-71-603, MCA.

In this case, where there is a slowly developing injury which does not lend itself to precise notification, the requirement of § 39-71-603, MCA (1985), is satisfied by giving the employer sufficient information to lead a reasonably conscientious person to conclude that there may be a connection between the worker's condition and his job.

Claimant's employer testified that he has no recollection of being told by claimant that his symptoms were related to his occupational duties. However, claimant's employer does recall having conversations with claimant about his physical complaints.

13

He simply could not recall the substance of those conversations at the time of trial. In a similar situation, we held in *Harmon v. Deaconess Hospital* (1981), 191 Mont. 275, 623 P.2d 1372, that:

> [T]he testimony of a witness that he does not remember whether a certain event or conversation took place does not contradict positive testimony that such event or conversation did take place. [Citations omitted.]

*Harmon*, 623 P.2d at 1374.

Thus, claimant's testimony regarding the substance of his conversations with his employer is uncontradicted.

We have previously held that:

> We must liberally construe the Workers' Compensation Act (§ 39-71-104, MCA), and there is probably no area more important to imply a liberal construction than on the question of whether sufficient notice was given of the accident.

*Ackerman v. Pierce Packing Co.* (1983), 206 Mont. 508, 511, 672 P.2d 267, 269.

While § 39-71-104, MCA (1985), has since been repealed, we must apply the statutes to this case which were in effect on the date of claimant's injury. *Young Motor Co. v. Division of Workers' Compensation* (1985), 219 Mont. 1, 710 P.2d 58.

We conclude that claimant satisfied the notice requirement. Since claimant's disability was the result of cumulative traumas which occurred over a period of time, the date of injury, for purposes of complying with the notice requirement, is the date on which claimant was first unable to continue with his employment due to his physical condition. That date was July 8, 1986. Applying

14

a liberal construction to § 39-71-603, MCA (1985), we conclude that by providing his employer with all the information available to him on that date regarding the nature of his injuries, the fact that his condition was aggravated by his employment, and the nature of job duties which appeared to aggravate his condition, claimant complied with the Workers' Compensation Act's notice requirements.

## II

Did claimant sustain an injury within the meaning of § 39-71-119(1), MCA (1985), during the course of his employment with John Jump Trucking, Inc.?

It is undisputed that claimant went to work for Jump with preexisting pathology in his cervical spine. It is undisputed that the condition of his spine made him more susceptible to further injury from even minor trauma, if experienced on a regular basis. It is undisputed that the bouncing and jarring from operating his logging truck did aggravate claimant's underlying condition and culminated in the disability for which he first left work on July 8, 1986. However, in spite of those undisputed facts, the hearing examiner concluded as a matter of law that:

> 3. Claimant did not suffer an "injury" as defined in Section 39-71-119(1), MCA (1985) that arose out of and in the course of his employment for John Jump Logging.

The trial court did not explain clearly how it arrived at that conclusion. However, in its discussion of that conclusion, it stated:

15

Where a disabling condition occurs over a long period of time, it may be an occupational disease rather than an injury. Greger v. United Prestress, Inc., 180 Mont. 348, 590 P.2d 1121 (1978). Also, it is important to consider the issue of "time definiteness," where a limited and specific exposure to fumes and chemicals satisfied both unexpectedness and time definiteness required by the injury statute. Bremer v. Intermountain Ins. Co., 223 Mont. 495, 727 P.2d 529, 43 St.Rep. 1942 (1986).

While the trial court indicated the importance of considering "time definiteness," it does not appear from its decision that it did consider that factor or that that was the basis on which it arrived at its decision.

As we pointed out in the previous section, we review a trial court's conclusions of law to determine whether they are correct.

On appeal, claimant contends that the following series of decisions from this Court establish that based on the undisputed facts he did sustain an injury within the meaning of § 39-71-119(1), MCA (1985): *Viets v. Sweet Grass County* (1978), 178 Mont. 337, 583 P.2d 1070; *Strandberg v. Reber Co.* (1978), 179 Mont. 173, 587 P.2d 18; *Hoehne v. Granite Lumber Co.* (1980), 189 Mont. 221, 615 P.2d 863; *Jones v. St. Regis Paper Co.* (1982), 196 Mont. 138, 639 P.2d 1140; *Wise v. Perkins* (1983) 202 Mont. 157, 656 P.2d 816; *Shepard v. Midland Foods, Inc.* (1983), 205 Mont. 146, 666 P.2d 758; *Kraft v. Flathead Valley Labor & Contractors* (1990), 243 Mont. 363, 792 P.2d 1094.

The application of this line of authority to a fact situation similar to the one in this case was first summarized in *Jones v. St. Regis Paper Co.* In that case, the claimant went to work at a lumber

16

mill with preexisting degenerative disc disease in his lower back. There was evidence that the continual bending and lifting done by him in his job caused stress on his lower back which aggravated the existing degenerative disc condition over the period of approximately two years that he worked there. Defendant denied that claimant sustained an injury within the meaning of § 39-71-119, MCA. It was the defendant's position that it was inconsistent for the claimant to allege that his injury developed gradually and that it was caused by a specific incident.

In reversing a Workers' Compensation Court conclusion that claimant had not suffered a compensable injury, we found the following evidence significant:

> Evidently, the Workers' Compensation Court did not consider Dr. Shanks' deposition testimony which indicated that a series of minor traumas could lead to a condition such as that suffered by the claimant.
>
> . . . In addition to his definite statement quoted above, that degenerative disc disease was not a disease, but a condition associated with acute trauma, or "repeated small traumas," Dr. Shanks testified that the condition had, to the best of his knowledge, been present before August 21, 1979.

*Jones*, 639 P.2d at 1145.

Based on the above testimony, we cited the following line of decisions to support a conclusion that claimant had in fact been injured during the course of his employment.

> In *Strandberg v. Reber Co.* (1978), 179 Mont. 173, 175-177, 587 P.2d 18, 19, 20, this Court held that when it is proved medically possible that an industrial accident or injury aggravated a pre-existing condition, that proof is sufficient to establish a compensable disability.

17

Similarly, in *Viets v. Sweet [G]rass County* (1978), 178 Mont. 337, 340, 583 P.2d 1070, 1072, we indicated that evidence that an accident aggravated a pre-existent condition is more reliable than evidence that an accident caused a disabled condition. In *Hoehne v. Granite Lumber Company* (1980), [189] Mont. [221, 225], 615 P.2d 863, 865, 37 St.Rep. 1307, 1310, a case more nearly on point, we held that "a tangible happening" under Section 39-71-119, MCA, could be "not a single isolated incident . . . but rather a chain of accidents or incidents, i.e., the stacking of lumber on a daily basis." We cited approvingly *Erhart v. Great Western Sugar Company* (1976), 169 Mont. 375, 380-381, 546 P.2d 1055, 1058, which said:

"Not only must claimant show an unusual strain, but the strain must result from a tangible happening of a traumatic nature . . . A tangible happening must be a perceptible happening . . . Some action or incident, *or chain of actions or incidents, must be shown which may be perceived as a contributing cause of the resulting injury.*" (Emphasis supplied.)

The lines in *Hoehne*, supra, were clearly drawn. The sole difference was that one party believed that a gradually developing, job-related injury not attributable to one specific incident was an "injury," and the other believed it was not. This Court held that it was. The reasonable conclusion from this holding is that, if there is strong enough evidence that the gradually developing injury is job-related, it is an "injury" within the meaning of section 39-71-119, MCA, and is compensable, whether or not claimant states that there was a specific incident.

*Jones*, 639 P.2d at 1145-46.

Based on the same authorities, we arrived at a similar conclusion in *Shepard v. Midland Foods, Inc*. In that case, the claimant had pain in his knees from degenerative conditions which preexisted his employment. That condition was diagnosed in 1972 and he went to work for his employer in 1973. However, there was evidence that the rate of degeneration was accelerated by both the physical nature of his work over a period of eight years, and a single

18

incident at work in which he twisted and struck his left knee. Several months after that incident he was forced to retire from work because his knees were so bad that they were no longer functional. The evidence was, however, that the single traumatic incident was a small factor in the total extent of his impairment, and that the primary cause of his ultimate disability was the long term wear and tear on his knees throughout the course of his employment from 1972 through 1980. When asked about the cause of his disabling condition, his treating physician testified: "The job that you described to me, that was described to me that Mr. Shepard did at Midland Pack, I am sure would be an accelerant." *Shepard*, 666 P.2d at 761.

In *Shepard*, the Workers' Compensation Court also denied claimant disability benefits based on its conclusion that his knees deteriorated for other than work-related reasons. However, citing the previous line of authorities, we reversed that decision by the trial court. In conclusion, we held that:

> In the case at bar, both Dr. Griffin and Dr. Taylor testified by deposition that the heavy work Mr. Shepard routinely performed at Midland would have aggravated his existing condition, i.e., would have accelerated the breakdown of his knees. Both physicians recognized the February 14, 1980 accident as an aggravant of Mr. Shepard's condition. X-rays showed "a marked increase" in varus bone deformity between 1972 and 1980, just after Mr. Shepard's accident. The x-rays indicate "many, many subluxations," or small dislocations in the knee joints, which were not evident in 1972. *The physicians stated that these symptoms were indicative of wear and tear on the joint*, and would probably result in pain and instability. This evidence of work-related injury aggravating a pre-existing

19

condition is considerable and is unrebutted. [Emphasis added.]

*Shepard*, 666 P.2d at 762.

Most recently, in *Kraft v. Flathead Valley Labor & Contractors*, we held that an employee who developed worsening symptoms of carpal tunnel syndrome from the repeated trauma of stacking lumber over a period of 15 months, sustained an injury within the meaning of § 39-71-119(1), MCA (1985).

The defendant, on the other hand, relies on a series of decisions from this Court which stand for the proposition that ailments which occur gradually over a long period of time lack sufficient "time definiteness" to be considered an injury. For example, in *McMahon v. Anaconda Co.* (1984), 208 Mont. 482, 678 P.2d 661, the claimant was exposed to various toxins in the work place over the period of 22 years that he worked for the employer. As a result, he complained of throat and lung problems which, in turn, led to psychological problems. The Workers' Compensation Court denied benefits for injury or disease. We remanded for further consideration under the Occupational Disease Act, however, we concluded that the conditions about which claimant complained resulted from exposure over too many years to fall within the definition of injury. In arriving at that decision, we stated:

> Despite the detailed definition, it remains a difficult task to satisfactorily describe and define injury to the exclusion of disease. See LaPlant, Opp, *Workers' Compensation and Occupational Disease*, 43 Mont.L.Rev. 75, 92-100 (1982). Professor Larson identifies two crucial points

20

of distinction: "Unexpectedness," and "time definiteness." 1B A. Larson, The Law of Workmen's Compensation, Section 41.31 at 7-357. We find the second point to be the critical factor in this case. The fact that claimant's ailments were so very gradual in onset excludes them from the definition of injury.

*McMahon*, 678 P.2d at 663.

We also added that:

We hesitate to attempt to locate the line between long-term, gradual trauma or disease, and short-term, accidental trauma, exposure or strain.

*McMahon*, 678 P.2d at 663.

In *Wear v. Buttrey Foods, Inc.* (1988), 234 Mont. 477, 764 P.2d 139, we held that where a grocery checker alleged numerous physical complaints attributable to the wear and tear of her job activities over a period of 17 years, she had also failed to satisfy the requirement of "time definiteness" which would classify her physical maladies as "injuries."

The State Fund argues that because claimant's disability resulted from micro-traumas which occurred over a period of approximately five and one-half years, the traumas were not sufficiently "time definite" to constitute an injury.

In those cases relied on by claimant, the period of time over which the injury occurred ranged from one week (*Wise v. Perkins*) to eight years (*Shepard*). In those cases relied upon by defendant, the physical conditions complained of were caused by activities that occurred over periods of 17 and 22 years. However, as we pointed out in *McMahon*, "[w]e hesitate to attempt to locate the line

21

between long-term, gradual trauma or disease, and short-term, accidental trauma, exposure or strain." *McMahon*, 678 P.2d at 663. Further, in this case it is not necessary that we do so.

We relied on Professor Larson's treatise for the "time definiteness" requirement. It is appropriate, therefore, to look to the same treatise for further elaboration on what is meant by "time definite." In doing so, we see that the requirement may be satisfied by applying it to either the time over which claimant's physical condition is caused, or the time period over which disability results. For example, Professor Larson states:

> Probably the underlying practical reason for insisting on a definite date is that a number of important questions cannot be answered unless a date of injury or accident is fixed, such as which employer and carrier is on the risk, whether notice of injury and claim are within the statutory period, whether statutory amendments were in effect, which wage basis applies, and many others.
>
> *It has been shown above that the concept of time-definiteness can be thought of as applying to either the cause or the result.* A relatively brief exposure to fumes, dust or cold may lead to a protracted period during which the victim gradually succumbs to disease; conversely, months or years of exposure to poisons, jolts or strains may lead to a sudden collapse on a particular day. In either case it is relatively easy to satisfy the definite-time requirement by merely accepting the view that suddenness may be found in either cause or result. . . .
>
> . . . It is safe to say, however, that on the strength of one or more of these reasons, most jurisdictions have at some time awarded compensation for conditions that have developed, not instantaneously, but gradually over periods ranging from a few hours to several decades, culminating in disability from . . . arthritis . . . back injury, herniated disc . . . and the like.

On the other hand, most of the same jurisdictions have at some time denied compensation for injuries in this category.

It will be observed, however, on examination of the unsuccessful cases, that most of them fall into the category of injuries whose cause and result were both difficult to locate in time. In other words, the majority of jurisdictions appear to be satisfied on the time-definiteness issue if either the precipitating incident or the manifestation of the disability itself was of a sudden or reasonably brief character. [Emphasis added.]

1B A. Larson, *The Law of Workmen's Compensation*, § 39.01 at 7-334, 7-335, 7-350, and 7-350.13 (1987).

In this case, we conclude that the "time definiteness" requirement articulated in *McMahon* is satisfied by the fact that the physical results of the traumas that claimant experienced over a protracted period of time manifested themselves over a relatively short period of time.

Claimant testified that he first began losing strength in his left arm in December 1985, and that those symptoms increased to include muscle spasms, cramps, and severe neck pain between that time and July 8, 1986. From the onset of his symptoms, until they became so severe that he could no longer continue working, approximately six months elapsed. Claimant's testimony in this regard is undisputed. For these reasons, the results of the traumas to which claimant was exposed during the course of his employment were sufficiently "time definite," and pursuant to our

23

previous decisions relied on in *Jones* and *Shepard*, we conclude that claimant was injured within the meaning of § 39-71-119, MCA (1985).

We reverse the judgment of the Workers' Compensation Court and remand this case for further proceedings consistent with this opinion, including a determination of the extent of claimant's disability and what, if any, benefits, costs, or fees he may be entitled to under the Workers' Compensation Act.

Reversed and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

24